THE VILLAGE OF BOLIVAR, Appellant, *v.* THE PITTSBURG, SHAWMUT AND NORTHERN RAILROAD COMPANY, Respondent, and THE LATHROP, SHEA AND HENWOOD COMPANY, Defendant.

*Railroad crossing at grade — the determination of the Railroad Commissioners as to the manner of crossing must be obtained — to what railroads this rule applies — neither the village through which the road passes nor the court can waive this requirement — injunction sustained.*

In 1887, or thereabouts, the Alleghany Central Railroad Company, which operated a railroad running through the village of Bolivar, but which did not cross Main street in that village, abandoned the portion of its road running through the village of Bolivar and removed the rails therefrom. In 1899 the title to the railroad was acquired by the Pittsburg, Shawmut and Northern Railroad Company.

In 1902 the latter company obtained leave to change the route of the road so that it would cross Main street in the village of Bolivar, and the alteration within the village of Bolivar was approved by a two-thirds vote of the trustees of that village.

November 7, 1902, the railroad company, in a proceeding in which the village was accorded a hearing, obtained an order of the Supreme Court permitting it to construct its road upon the altered route across the streets and highways of the village of Bolivar including Main street.

*Held,* that section 60 of the Railroad Law (Laws of 1890, chap. 565, as added by Laws of 1897, chap. 754) applied to the changed portion of the route in the village of Bolivar, and that, under the section as amended, the railroad company was not entitled to construct its railroad across Main street at grade until the Board of Railroad Commissioners had determined as to the manner of the crossing, and that a crossing above or below the street was impracticable;

That the amended section did not apply alone to railroads thereafter built by railroad corporations subsequently formed;

That the sole power to determine the manner in which the crossing should be made rested with the Board of Railroad Commissioners, and that neither the court nor the village trustees could bind the village or the public by consenting that the crossing should be made at grade;

That the village had no adequate remedy at law if the railroad was built across the street at grade, and that it was, therefore, entitled to an injunction restraining the railroad company from constructing a grade crossing.

APPEAL by the plaintiff, The Village of Bolivar, from an order of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of the county of Allegany on the 4th day of May, 1903, vacating an injunction theretofore granted in the action by the county judge of Allegany county.

*E. M. Worth* and *De Merville Page,* for the appellant.

*Frank Sullivan Smith,* for the respondent.

WILLIAMS, J.:

The order appealed from should be reversed, and the motion to vacate injunction be denied.

The question involved is the right of the defendants to build their railroad across Main street in the village of Bolivar, Allegany county, *at grade.*

The action was brought to restrain such construction because the defendants had not obtained a determination by the Board of Railroad Commissioners that it was impracticable to build over or under the highway.

The Allegany Central Railroad Company was incorporated in 1881, and during that and the subsequent year constructed a narrow gauge railroad between Olean and Angelica through the village of Bolivar. That road did not cross Main street in the village of Bolivar at all. It was operated for some years after it was built on the original route between Olean and Angelica, but about fifteen

years ago the portion of the road between Bolivar and Angelica was torn up, the rails thereof removed and the road was abandoned and has never since been operated. The title of the Allegany Central Railroad Company to this road by various consolidations and mergers finally became vested in the defendant railroad company upon its organization in August, 1899. In June, 1902, the defendant railroad company took proceedings under chapter 267 of the Laws of 1891 to change the gauge of the railroad, and such change was made. It also took proceedings under section 13 of the Railroad Law (Laws of 1890, chap. 565, as amd. by Laws of 1897, chap. 235) for the change of its route, and such change was made, the new route through the village of Bolivar crossing Main street at the place in question. A map, survey and profile of the proposed change with the proper certificate was filed in Allegany county clerk's office June 2, 1902, and the alteration within the village of Bolivar was approved by a vote of two-thirds of the trustees of the village June 18, 1902. The defendant railroad company applied at a Special Term of the Supreme Court November 7, 1902, for an order permitting the railroad company to construct its road upon the altered route across the streets and highways of the village of Bolivar, including Main street. The village was heard upon that application and the order applied for was made. The railroad company communicated with the Railroad Commissioners with reference to this crossing on Main street and the board replied that they did not feel called upon to act with reference thereto. The railroad company was preparing to complete the crossing by its road at Main street at grade when, April 17, 1903, this action was commenced and the injunction in question was issued and served. The order appealed from vacated that injunction.

The plaintiff claims that the piece of railroad in question is within the provisions of section 60 of the Railroad Law (Laws of 1890, chap. 565), added by chapter 754 of the Laws of 1897, which reads as follows :

"§ 60. All steam surface railroads hereafter built, except additional switches and sidings, must be so constructed as to avoid all public crossings at grade whenever practicable so to do. Whenever application is made to the Board of Railroad Commissioners under section fifty-nine of the Railroad Law, there shall be filed with said board

a map showing the streets, avenues and highways proposed to be crossed by the new construction, and the said board shall determine whether such crossings shall be under or over the proposed railroad, except where said board shall determine such method of crossing to be impracticable. Whenever an application is made under this section to determine the manner of crossing, the said board shall designate a time and place when and where a hearing will be given to such railroad company, and shall notify the municipal corporation having jurisdiction over such streets, avenues or highways proposed to be crossed by the new railroad. The said board shall also give. public notice of such hearing in at least two newspapers published in the locality affected by the application, and all persons owning land in the vicinity of the proposed crossings shall have the right to be heard. The decision of the said board rendered in any proceedings under this section shall be communicated, within twenty days after final hearing, to all parties to whom notice of the hearing in said proceedings was given, or who appeared at said hearing by counsel or in person."

The defendants claim this piece of railroad is *not* within the provisions of this section ; that. the section only applies to railroads thereafter built by railroad corporations *thereafter formed*. The reason urged for this construction is the assumption that the Railroad Commissioners can only be called upon to act as to the manner of crossing where an application is made under section 59 of the Railroad Law (as amd. by Laws of 1895, chap. 545), and that can only be done as to corporations *thereafter formed*. This assumption is not authorized by the language of section 60. It is based upon the language of the *second* sentence of the section, which does refer to section 59, and which is not applicable to this piece of railroad, because no application here could be made under section 59. The *third* sentence of section 60 is, however, applicable to this piece of road. It is as follows: " Whenever an application is made under this section, to determine the manner of crossing, the said board shall designate a time and place," etc.

The application under section 59 is for a certificate permitting the corporation to exercise its powers and to build its road. It in no way relates to the manner of crossing highways, and then the *second* sentence of section 60 provides that when the application for

the certificate under section 59 *is* made, the board shall *also* determine the manner of crossing highways by such new road to be constructed. The third sentence provides for cases where the application is made, not for the certificate under section 59, but directly under section 60 for the determination of the manner of crossing highways. These two applications are distinct and separate, but the procedure under both sections, as to the determination of the manner of crossings, after the making of the applications themselves, is to be the same, and is provided for in the latter portion of section 60. This we believe to be the proper construction of these sections. While there is no express provision in either section 59 or 60, that an application shall be made to the Board of Railroad Commissioners to determine the manner of crossings, yet section 60 assumes that an application shall be made and that the board shall thereupon determine the question.

It is not claimed that the piece of railroad in question is either an additional switch or siding of the railroad, and, therefore, excepted under the provision of section 60. It is, therefore, within the prohibition against constructing the same at grade, until an application is made to the Board of Railroad Commissioners, and they determine that a crossing over or under the highway is impracticable.

It being settled that the piece of railroad is within the provision of section 60 of the Railroad Law, the defendant railroad company had no right to construct its road across Main street *at grade* until the Board of Railroad Commissioners had determined as to the manner of crossing, and that a crossing above or below the street was impracticable. This statute was enacted for the benefit of the public at large, and neither the village trustees nor the court could directly or indirectly determine the question, or consent to or order a grade crossing. Nor could the village be estopped by any action of its board of trustees from objecting to the building of the road otherwise than is provided by the statute. The approval by the village trustees of the change of route of the railroad was made in compliance with section 13 of the Railroad Law as to such change of route, and the order of the court was also made in compliance with section 11 of said statute, but neither such approval nor order had any reference to the manner of crossing the street in question. The provisions of the statute under which such approval and order

were made in no way related to the manner of crossing the streets of the village. The sole power to determine that question rested with the Board of Railroad Commissioners under this section 60 of the Railroad Law.

It is suggested that the village had an adequate remedy under section 62 of the Railroad Law (added by Laws of 1897, chap. 754, and amd. by Laws of 1899, chap. 359), after the road was built across the street, by application to the Board of Railroad Commissioners to change the crossing to one over or under the street. This is hardly true. In case of such subsequent application the expense of the change would fall, one-quarter upon the village and one-quarter upon the State, and only one-half upon the railroad company, while if the manner of crossing is determined before the road is built, the whole expense falls upon the railroad company. (Railroad Law, § 65, added by Laws of 1897, chap. 754.)

We think there was no adequate remedy to protect the village and the public, except the injunction granted by the county judge.

We conclude that the order appealed from should be reversed, with ten dollars costs and disbursements, and the motion to vacate injunction be denied, with ten dollars costs.

All concurred.

Order reversed, with ten dollars costs and disbursements, and motion to vacate injunction denied, with ten dollars costs.