·of motive power, would necessitate the carrying of the streets over or under the railroad.

The learned counsel for the appellants asks us to reverse the order ·of the Public Service Commission because of the fact, which he assumes, that the contemplated improvements when made would then require the elimination of the crossings by the railroad company at its sole expense under section 11 of the railroad law. There are two ·conclusive answers to this contention: First, the result assumed is not established by the evidence; second, it is the existing crossings that .are eliminated, and not a crossing that may exist in the future. It is the existing crossings that are dangerous and a menace to public safety, and it is the expense of eliminating the existing crossings only to which the village is required to contribute.

The order of the commission must be affirmed, with $50 costs. All ·concur.

---

In re NEW YORK CENT. & H. R. R. CO.

Appeal of VILLAGE OF WHITE PLAINS.

(Supreme Court, Appellate Division, Second Department. March 4, 1910.)

RAILROADS (§ 99*)—ELIMINATION OF GRADE CROSSINGS—CHANGE OF ROUTE— LIABILITY FOR EXPENSES.

The grade crossing act (Laws 1897, c. 754), adding sections 62–66 to the railroad law (Laws 1890, c. 565), which sections provide the railroad commissioners may when public safety demands it change any existing grade crossing, expenses to be borne by the railroad, village, and state in proportions named, and may determine "what alterations or changes, if any, shall be made." Railroad Law, §§ 11, 13, provide how a railroad may change its route by filing maps, etc., and place the whole expense of crossing highways on the railroad. Public safety demanding it, the Public Service Commission ordered a grade crossing eliminated, and the plan of change which was the only feasible one was to change the route of the railroad for about 2,000 feet. *Held*, that the village could not contend that the commission had no authority to make such change because their only authority to make such change of route was under Railroad Law, §§ 11, 13, requiring the railroad in such case to pay the whole expense, since that section applies only to a change of route or grade made primarily and solely for the benefit of the railroad, and since the commission had the power to adopt any reasonable plan to subserve the public safety, as was the object of the crossing act.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 99.*]

Appeal from Public Service Commission, Second District.

Petition by the New York Central & Hudson River Railroad Company against the Village of White Plains for the elimination of grade crossings. From an order of the Public Service Commission, directing the elimination of the crossings, the village appeals. Affirmed.

It is conceded, first, that public safety requires the elimination of the grade crossings involved in this proceeding; second, that it is a practical impossibility to eliminate such crossings on the present line of the road, and that the village does not want such an elimination; third, that the only practical method of such elimination necessitates a change of the route or line of the

---

railroad for a distance of about 2,000 feet; fourth, that the cost of elimination by this method is a saving of over $70,000 to the village over the cost of elimination on the present line of the railroad.

Argued before HIRSCHBERG, P. J., and WOODWARD, RICH, THOMAS, and CARR, JJ.

Henry C. Henderson, for appellant.
George H. Walker, for respondent.

RICH, J.  The only question involved upon this appeal not considered in the Village of Ossining Case, decided herewith (121 N. Y. Supp. 524), requiring consideration here, is whether the Public Service Commission possesses the power and authority to change the existing route and grade of a railroad to any extent as part of the process of eliminating dangerous grade crossings in the interest of public safety, and to require the state and village, respectively, to pay their statutory proportion of the expense of so doing, for it appears that the village has not been required to contribute to the payment of any expense made necessary by the plan of elimination, not solely limited to the expense of elimination of the crossing of the present existing tracks of the railroad company.  Upon the hearing, after laborious and persistent effort on the part of the chairman of the commission to ascertain the wishes of the village as to whether the elimination should be effected on the existing line of the road, or accomplished by the change of route shown on the plan of the company, the commission was informed that the village desired an elimination of the crossings by a change of the route of the railroad, in conformity with the plan presented, and that the only question the village wanted decided was whether the highways should be carried over or under the tracks of the road at the proposed new location, and that such elimination should be accomplished in a manner which should be determined to be for the best interests of the village.  It appears that by the plan adopted by the commission, which involves a slight change of the line of tracks of the respondent's road, all of the results are obtained that could be obtained by an elimination on the existing route at an estimated cost to the village of not exceeding $50,000, while to accomplish the same result upon the present line the expense to the village would be $120,000. The contention of the village, sharply stated, is that the present grade crossings are so dangerous that public safety requires their elimination; that such elimination, without changing the line of the railroad for a short distance, is impracticable and the cost thereof prohibitive; that the only practical method of elimination is by changing the line of the road as directed by the commission, yet that, notwithstanding these facts and the further facts that the railroad company has acquired at its own expense all of the land required to effect such change of route, and that the elimination on the new line will result in a saving to the village of over $70,000, the commission has no authority to make the order from which the appeal is taken, because the only authorized procedure for changing the line of a railroad is provided by section 13 of the railroad law (Laws 1890, c. 565).

In my judgment this contention should not prevail for two reasons:

121 N.Y.S.—34

(1) The section of the railroad law applies only to a change of route or grade made primarily and solely for the benefit of the railroad company. The grade crossing act (Laws 1897, c. 754) has for its primary object the safety of the public, and the power to alter and change for a short distance the line or grade of a railroad when such change is necessary, and the only available method of elimination of grade crossings required by public safety, is not limited by section 13 of the railroad law. The cases of Erie Railroad Co. v. Steward, 61 App. Div. 480, 70 N. Y. Supp. 698, and Village of Bolivar v. P., S. & N. R. R. Co., 88 App. Div. 387, 84 N. Y. Supp. 678, cited by the learned counsel for appellant, do not control the disposition of the question under consideration. All that was decided in the first case was that a railroad could not for its own benefit and advantage change its route for a distance of nearly three miles to a new location one-half mile distant from its existing road without first obtaining the order and consent required by section 13, and that it could not construct its road on a new route and retain and operate its road over its old route. In the Village of Bolivar Case it was decided that the necessity yet existed when a railroad company changed its route under the provisions of section 13 for an application to the railroad commissioners under the provisions of section 60 for a determination as to how the new road should be carried across existing streets of a village. In both of these cases the change was made solely for the benefit of the railroad company, and in neither was any consideration given to the powers or authority of the railroad commissioners under the grade crossing act to direct a limited change of route or grade made necessary by the elimination of grade crossings in the interest of public safety.

(2) When, as in the case at bar, public safety requires the elimination of a grade crossing, which cannot be obtained without a limited change of the route or grade, one or both, the statutory power vested in the Public Service Commission to determine "what alterations or changes, if any, shall be made," authorizes it to adopt a plan involving a limited change of route or grade made necessary to accomplish the result. It would be a very narrow construction of the grade crossing act to hold that the power of the commission is limited to ordering changes in highways crossing railroads at grade. The effect of such a construction would be to deprive the commission of the power to safeguard public safety at many railroad crossings which cannot be so eliminated without incurring so great an expense as to be impractical and prohibitive.

The issue here, it must be kept in mind, is not limited to the village and railroad company. It involves the safety of the public, which is of paramount importance, and which it was the intent of the Legislature, by the enactment of the grade crossing act, to secure. The act should be so construed as to carry out and make effective the evident intention of the Legislature.

The determination of the commission is sustained by the evidence. There is nothing in the record of sufficient weight to warrant the reversal of such determination, and the order and determination must be affirmed, with $50 costs. All concur.