## BENNETT vs. BOYLE.

The law of eminent domain extends to lands needed for the public use, and no further. Private property may be taken by the state and the title of the owners divested for this purpose and for no other. *Per* BROWN, J.

Within this limitation the power of the legislature is indisputable, but further than this it cannot go. The use to which it is to be appropriated must be a public use. *Per* BROWN, J.

Where a statute authorizes the land of individuals to be taken, for the purpose of widening an avenue in a city, the powers and jurisdiction of the commissioners are limited and restrained to the lines of the avenue as enlarged. Beyond and outside of those lines they can exert no power or authority whatever.

It is the sole office of the commissioners to estimate and ascertain the value of the lands taken, and the improvements thereon, with the damages to be sustained by the owners by reason thereof.

Buildings of a permanent character are part and parcel of the freehold, and pass from the owner to another, or to the public, in all ordinary transfers, either voluntary or coercive, as the land itself passes, and as a part thereof.

When land is taken for the uses of a street or avenue, such buildings and parts of buildings as are within the lines of the proposed improvement pass, by force of the statute and the proceedings taken under it, to the public authorities, with the land taken; the owners being thereby divested of their title, which is resumed by the public; while the residue of such buildings, or parts thereof beyond and outside of such lines remain to the owners, with the land upon which they stand, the title thereto being untouched and unaffected by the statute and the proceedings taken under it.

APPEAL by the defendant from a judgment entered at a special term, after a trial at the circuit. The action was brought to recover the value of a building situated upon a lot in the city of Brooklyn, on which the plaintiff held a mortgage, to which building the defendant claimed title by virtue of an alleged sale and transfer from the commissioners of estimate and assessment in the matter of widening Fourth avenue, in that city.

*G. G. Reynolds,* for the plaintiff.

*J. W. Gilbert,* for the defendant.

*By the Court,* BROWN, J.  In the view which I shall take of the questions involved in this action, it will not be necessary to consider the power of the legislature to pass the law under which the proceedings for widening Fourth avenue in the city of Brooklyn have been had; nor to examine at any length the 8th finding of the judge, to which the defendant has taken exception that the words "amounts paid for damages to buildings" were erased, and "the amounts paid for buildings" were written in the report of the commissioners after it was signed and filed for confirmation and without the authority or direction of the commissioners, and subsequent to the confirmation thereof by the court.  The principal question may safely be disposed of upon the authority of the commissioners to dispose of the building in dispute to the defendant, in the manner which he claims in his answer they have done.

Horace R. Fletcher, the plaintiff's mortgagor, was the owner of the lands and premises mentioned in the complaint, and on the 17th of February, 1859, he, together with Olive Jane his wife, conveyed them to the plaintiff by mortgage to secure the payment of $3500, with the interest.  Upon the lands there was a dwelling house, consisting of a main building upon the street, and an extension united with the main building, which extended in the rear; which extension was a frame filled in with brick, cellar and basement, with a raking cornice around the main building and extension.  This extension, the witnesses say, might be used and moved back and attached to another building, and was of the value of $600.  These buildings, at the time of executing the mortgage, constituted a part of the plaintiff's security.  The act of the 17th of April, 1861, to amend the act for the widening of Fourth avenue in the city of Brooklyn, provided that there should be added to the avenue, on its northwest side, fifty feet from its intersection with Flatbush avenue to Carroll street, and forty feet from Carroll street to the city line at or near 60th street.  The greater portion of the main building upon the

Bennett *v.* Boyle.

mortgaged premises fell within the line of the avenue as widened, and a small part of the main building, with the whole of the building called the extension, and the lands upon which both stood, were left outside of the line of the street, and were not therefore taken for the public use. In the report of the commissioners to estimate the expense of the improvement and the damages to be sustained by the owners of the lands and buildings affected thereby, Horace R. Fletcher was awarded the sum of $4641.26, of which sum $3800 was either for damages to buildings, as the plaintiff claims, or for buildings, as the defendant claims; the latter insisting that the award was a compensation for the entire building, although a part of it was not upon the lands taken for the improvement. The money awarded was paid by the commissioners to Horace R. Fletcher. The plaintiff was not present. He had, however, before that time, executed a release of the lands taken for the avenue, in due form of law, and also a certificate that he had so released the lands taken for the avenue, which were left with Abraham Lott to be delivered by the latter to the commissioners, and which were so delivered at the time the award was paid. Both these papers declared in express terms that the plaintiff retained the residue of the mortgaged premises as security for the money secured by the mortgage. Two thousand dollars of the sum awarded was at the suggestion of Abraham Lott and without the knowledge of Mr. Bennett, the plaintiff, left in the hands of the former by Horace R. Fletcher, to remain, as he says, until the building was removed. Edward Boyle, the defendant, claims to be the owner of the main building as well as the extension in the rear, by purchase from the commissioners of estimate, who, he says, sold the same to him, and this purchase, which does not seem to be disputed, is his only title. Just before the commencement of this action he gave notice to Fletcher to vacate the buildings, to the end that he might remove them, and avowed his intention to remove them from

the mortgaged premises under his title derived from the commissioners.

If the proof taken at the trial established certainly and positively that Horace R. Fletcher accepted and received the sum awarded to him by the commissioners in full payment and satisfaction and as a compensation for the lands and for the buildings upon the lands taken, as well as for those upon the adjoining lands, as expressed in the receipt signed by him (which I think it does not establish by any means) I do not see how it could affect or impair the lien of the plaintiff. He was not a party to or present at the transaction, and Mr. Abraham Lott was his attorney to deliver the release and for no other purpose. He gave no assent, and did nothing which can be construed into an assent that Fletcher's receipt should have the effect which Boyle claims for it. So far from that, he gave the commissioners express notice, in the release and in the written certificate, that he looked to and retained his lien upon the land not included within the lines of the avenue as security for the payment of the mortgage debt. This was enough in itself to dispose of all claim which they or Boyle, who claims from them, could have to the building outside of the line of the avenue. Let us look, however, for a moment, at the nature of the proceedings under which the lands were taken for the avenue, and the powers of the commissioners under them. The act of the 17th of April, 1861, and that to which it was an amendment, was an exercise by the legislature of the right to resume the posesssion and the ownership of private property for the public use. The law of eminent domain extends to lands needed for the public use, and no further. Private property may be taken by the state, and the title of the owners divested for this purpose, and for no other. Within this limitation the power of the legislature is indisputable, but further than this it cannot go. The use to which it is to be appropriated must be a public use. The law was so far relaxed by the constitution of 1846 as to allow private roads to be opened through private prop-

Bennett *v.* Boyle.

erty. Until that time not even a right of way could be taken from one man and given to another. "The constitution, by authorizing the appropriation of private property to public use, impliedly declares that for any other use private property shall not be taken from one and applied to the use of another. It is in violation of natural right, and if it is not in violation of the letter of the constitution it is of its spirit, and cannot be supported. This power has been supposed to be convenient when the greater part of a lot is taken and only a small part left, not required for public use, and that small part of but little value in the hands of the owner. In such case the corporation have been supposed best qualified to take and dispose of such parcels, or gores as they have sometimes been called; and probably this assumption of power has been acquiesced in by the proprietors. I know of no case where it has been questioned and where it has received the deliberate sanction of this court." (*Opinion of Ch. J. Savage, in the matter of Albany street,* 11 *Wend.* 148. *See also Varick* v. *Smith,* 5 *Paige,* 137; *Bloodgood* v. *Mohawk and Hudson R. R. Co.,* 18 *Wend.* 9.) Fourth avenue was to be enlarged so as to be of a uniform width of 120 feet. For this purpose a strip of land 50 feet in width for a part of the distance, and 40 feet for the residue of the distance, was taken by force of the act to which I have referred, and added to the street. The powers and jurisdiction of the commissioners were limited and restrained to the lines of the avenue, as enlarged. Beyond and outside of them they could exert no power or authority whatever. It was the value of the lands taken and the improvements thereon, with the damages to be sustained by the owners by reason thereof, that the commissioners were to estimate and ascertain. This was their office and they had no other. Buildings, such as those upon the mortgaged premises, are part and parcel of the freehold, and pass from the owner to another or to the public in all ordinary transfers, either voluntary or coercive, as the land itself passes, and as a part thereof. Where land is taken for

the uses of a street or avenue such buildings and parts of buildings as are within the lines of the proposed improvement pass, by force of the statute and the proceedings taken under it, to the public authorities with the land taken, the owners being thereby divested of their title, which is resumed by the public; while the residue of such buildings, or parts thereof, beyond and outside of such lines, remain to the owners with the land upon which they stand, the title thereto being untouched and unaffected by the statute and the proceedings taken under it. If I am right in the view I have taken of the law of eminent domain the commissioners were without any authority over that part of the buildings known as the extension, and could grant no right or title thereto to the defendant Edward Boyle.

The judgment should be affirmed with costs.

[KINGS· GENERAL TERM, December 14, 1863. *Brown, Scrugham* and *Lott,* Justices.]