(62 Misc. Rep. 15.)

JOHNSON v. STATE.

(Court of Claims of New York. January, 1909.)

1 PUBLIC LANDS (§ 188*)—CROWN GRANTS—EXCEPTION IN GRANT.
   Wood creek was a part of the ordinary route of travel between the Hudson river and Lake Champlain by the Indians and the colonists, and in a patent from the crown to S. was excepted "as a common highway for the benefit of the public." S. was attainted for treason in 1779 by the New York Legislature, and his lands were forfeited and sold. *Held*, that those claiming under the S. patent have no interest in the bed of Wood creek; such exception being a dedication of the creek to the public.
   [Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 604; Dec. Dig. § 188.*]

2. EMINENT DOMAIN (§ 93*)—SPECULATIVE DAMAGES.
   Where the state has taken adjacent lands for canal purposes, it cannot be compelled by the court to take additional lands which may be flooded, if the high navigable stage of the canal should ever be reached; and such lands not being necessary for ordinary use, and the flooding being only a possibility, the possible damage to them will not be considered in fixing the award for the lands taken.
   [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 237; Dec. Dig. § 93.*]

3. NAVIGABLE WATERS (§ 39*) — RIGHTS OF RIPARIAN OWNERS — IMPROVEMENT FOR NAVIGATION.
   The rights of owners of land bordering on a navigable river must yield to the powers of the government on improvements of the same for purposes of navigation, whether exercised by the federal or the state government.
   [Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 21, 82, 103, 117, 127, 241–244; Dec. Dig. § 39.*]

Claim of Jane B. Johnson against the State of New York for compensation for the appropriation of water privileges and riparian rights

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in a certain stream. Judgment for claimant for a portion of her demand.

Northrup R. Holmes, for claimant.

George P. Decker, Deputy Atty. Gen., for the State.

MURRAY, J. For the purpose of acquiring land for what is commonly known as the "new barge canal," the state through its authorized officer and pursuant to law, on or about the 26th day of October, 1906, served upon the claimant the usual map and notice of appropriation, wherein the property sought to be appropriated is described as follows:

All that piece or parcel of land "situated, lying, and being in the town of Whitehall, county of Washington, and state of New York, as shown in the accompanying map and described as follows: Beginning at an iron pipe in the property line between the land of Jane·Johnson and the land of Jeremiah Brown, said iron pipe being N. 57° 19' W. 305.07 ft. from Stra 128+00 of the center line of the improved Champlain Canal; thence along the land of Jane Johnson N. 18° 22' 30" E. 264.58 ft. to the low-water line on the south bank of Wood creek; thence easterly and southerly along said low-water line to the intersection with the said property line separating the lands of Jane Johnson from the lands of Jeremiah Brown; thence along said property line N. 84° 08' W. 610.31 ft. to the place of beginning—said low-water line being determined by offsets from a base line as shown in the accompanying map, containing 6.56 acres more or less; also all the right, title, and interest of the said reputed owner in the lands in the bed of said stream, and also all of her right, title, and interest as riparian owner."

In this case the claimant contends she is entitled to compensation from the state for the appropriation of her water privileges and of riparian rights in and to the bed of Wood creek. Counsel for the claimant lays stress upon that part of the notice of appropriation which specifies "all of the right, title, and interest of the said reputed owner in the bed of said stream," and her right as riparian owner. I take it, however, that, no matter what the wording of the notice may be, if the claimant is not the owner, she is not entitled to compensation from the state for property she does not possess. The wording of the notice of appropriation quoted could not give the claimant title to property she did not own.

The notice seeks to appropriate her right as "reputed owner" in the lands in the bed of said stream. The allegations of the claim are taken as denied by the state by our rules of practice. Therefore it is the duty of the court to ascertain what is her right as reputed owner in the bed of said stream, to ascertain and fix what compensation, if any, the claimant is entitled to. The determining of the amount of compensation embraces the question of the amount of land taken, and the land taken involves the question of ownership to it. Hence the first question discussed will be: Is the claimant the owner of the bed of said stream and of such privileges and rights?

The land sought to be appropriated by the state is a portion of the claimant's farm, which lies in the township of Whitehall. This farm was. part of a large tract of land which was originally granted to one Philip Skene and others by crown patent of the colony, dated March 15, 1765. This patent granted 25,000 acres of land. Through

the center of it ran Wood creek; the land being described as being on both sides of Wood creek. In this patent there are several exceptions, among which is, "excepting the said Wood creek, which is reserved as a common highway for the benefit of the public;" and, again, "also except Wood creek as aforesaid for a common and public highway." The certificate of survey contains a similar reservation of Wood creek, and the map made by the colonial surveyor general shows the colonial line of boundary running along the west side of Wood creek at one point.

Prof. Farrand, in his chapter on Indian Trails and Waterways (The American Nation, vol. 2, p. 28), states that the routes of travel between the Hudson and Lake Champlain were known as the "Grand Passes," and says:

"Still another route between the Hudson and Lake Champlain was from Ft. Edward northeast over a portage to Wood creek and down that stream to the lake."

Further historical research shows that this line of travel by way of Wood creek, between the Hudson and Lake Champlain, was recognized from the earliest time. Wood creek was used by the Indians before the coming of the colonists, and was used by the colonists during the colonial period. The exception of Wood creek, as a common and public highway, in the crown patent to Skene, viewed in the light of the then existing conditions, is of peculiar significance. I believe that the exception was intended to recognize Wood creek as part of a well-defined and well-known route of travel between the Hudson and Lake Champlain; that it considered the waters of Wood creek as navigable, and as being used for public transportation; that it amounted to a dedication of the creek and the navigability of its waters to the people, and was a confirmation of the then existing right of the people to use the navigable portion of said creek as a means of public travel. In the Revolutionary War Skene sided with the crown, and by act of the Legislature, passed October 22, 1779 (Laws 1779, p. 26, c. 25), he was attainted of treason. This act also declared his estate should be forfeited to the people of the state.

From this brief résumé, it will be seen that from time immemorial Wood creek was part of a traveled route; that the claimant's original predecessor in title never had title to the bed of Wood creek; but that it was expressly reserved to the public as a highway for a route of travel between the Hudson and Lake Champlain. In the act of attainder referred to it provided for the appointment of commissioners, with authority to sell and convey the estates of the persons which had been declared forfeited. Section 25 of this act, prescribing the form of the deed which the commissioners should execute, provided the deed should contain the following recital:

"All and singular the estate, right, title, and interest in and to the said premises, which in consequence of any conviction or attainder has become forfeited or vested in and to the said estate."

The portion of the Skene lands which embraced the claimant's farm was sold by these commissioners under this act to one John Williams. These commissioners undoubtedly intended to preserve

the inviolability of Wood creek as a common highway for the benefit of the public, for they used the creek as a boundary line dividing the lots sold. In no case has it been shown that a lot crossed the creek, or a deed made by them granted the bed of the creek where it was used as part of the navigable highway. Through various mesne conveyances from Williams the claimant became the owner of the farm in question. None of the deeds in claimant's chain of title purports to convey the bed of Wood creek. In the descriptions the boundary line running beside Wood creek stops at low-water mark. Neither did the claimant show that she or her predecessors ever exercised or claimed exclusive right in the bed of or to the waters of Wood creek.

The state proved that there had never been any legislative grant made by the commissioners of the land office to any one of the bed or waters of Wood creek, contiguous to the Johnson farm, or on which the Johnson land abutted, and that in recent years the state had cleaned the bed or channel of the creek. I think it has been shown that Skene, by his crown patent, never became the owner of Wood creek; that the commissioners of forfeiture did not convey the bed of Wood creek to Williams; that the claimant produces no paramount title of ownership in or to said creek as against the state; that, from time immemorial, Wood creek was used as part of a route of communication between the Hudson and Lake Champlain; that it was reserved to the people "as a common highway for the benefit of the public; that the title to the creek has been in the people, and is now in the state."

At the present time the state is engaged in a work of great public benefit. It is utilizing Wood creek for the purpose of the new barge canal, canalizing it for the public good. It should be regarded as an improved highway for the benefit of the public. It has been held the state has power to impress navigability on any stream within its boundaries. See Morgan v. King, 35 N. Y. 454, 91 Am. Dec. 58; City of Oswego v. Oswego Canal Co., 6 N. Y. 257–266. The waters of Wood creek were determined navigable when the crown patent excepted the creek "for a common and public highway and reserved it for the people as a common highway for the public benefit." The state is now improving the highway—the navigation of the creek—for a general public benefit. This case would, therefore, seem to fall within the reasoning of the decision in Slingerland v. International Contg. Co., 169 N. Y. 60, 61 N. E. 995, 56 L. R. A. 494, and cases cited, wherein the court held:

"The doctrine must be regarded as settled that, whatever the rights of the owner of lands bordering upon, or within the waters of, a navigable river, they must yield when the powers of government are called into exercise for a general benefit in the improvement of navigation; and this is, of course, true, whether the power be exercised by the federal or the state government. Loss may result to the individual; but he is remediless at law. He can have no private rights in the river, which are exempt from the requirements of a public or governmental necessity."

Mr. Ladue, one of the division engineers employed by the state, testifies that the high navigable stage of the improved canal was 113.9; that, if such high navigable stage should ever be reached, it would

flood 4.6 acres more of the claimant's land than the state sought to appropriate by its map and notice of appropriation; and that the water in the canal would be more or less controlled by the dam at Whitehall. Upon this state of facts, the claimant asks the court to award damages for 4.6 acres more than the state seeks to appropriate, upon the theory that at some time, if the water in the canal should reach the high navigable stage, the 4.6 acres would be flooded.

The second question discussed would be: Is the claimant entitled to compensation for these 4.6 acres? The barge canal act specifies how the state shall acquire property for the purposes of the canal. The provisions of the statute have been followed in this case. The state, by its map and notice, designates the amount of the claimant's land it deems it necessary to take. It has described it by metes and bounds, and specifies it appropriates 6.56 acres. The state assumes the responsibility of acquiring all the land it deems necessary to appropriate. This court has often awarded to claimants the value of the land taken, and given damages for the injury done to the remainder, or the diminished value of the balance left. But that is not this case; for here the claimant asks the court to compel the state to take more land than it certifies it needs, or to award compensation for 4.6 acres in excess of the amount mentioned in the notice of appropriation.

It was held in Bell Telephone Co. v. Parker, 187 N. Y. 303, 79 N. E. 1008, that the only property which can be taken is the precise property designated in the petition. In People ex rel. Johnson v. Village of Whitney Point, 102 N. Y. 81, 85, 86, 6 N. E. 895, 897, the court, in discussing this question, say:

"They are bound to lay it [the highway] out upon the precise line designated and follow the precise description contained in the petition. The petition was required to describe the lands to be taken. * * * It is true that the variation here is not great; but, if a change in the center line of the road for one rod can be justified, * * * it is difficult to perceive how their power could be limited. They might change the road for two rods or three rods. * * * We think the safe and better rule * * * is to hold that the trustees in such cases must follow the precise description contained in the petition."

See, also, Eckerson v. Village of Haverstraw, 137 N. Y. 88, 32 N. E. 1111; People v. Fisher, 190 N. Y. 468, 83 N. E. 482; Hayden v. State, 132 N. Y. 533–536, 30 N. E. 961; Matter of Poughkeepsie Bridge Co., 108 N. Y. 483, 15 N. E. 601.

It has always been held that by right of eminent domain the public can acquire no title to property which lies beyond the line of a proposed improvement, and that they can take only the land necessary for the improvement. Bennett v. Boyle, 40 Barb. 551; Matter of Albany Street, 11 Wend. 149, 25 Am. Dec. 618.

Continuing the discussion, it must be borne in mind that, up to the time of the filing of this claim, no part of this 4.6 acres had been damaged. There had been no flooding of it by the operation of the improved canal. It had suffered no injury, and it was beyond or outside of the land sought to be appropriated by the state. Whether or not it will be flooded in the future depends upon the water in the canal reaching a certain height. Whether the water in the canal will

be so controlled by the dam at Whitehall as to prevent injury, and upon other possibilities or contingencies which may or may not occur or happen in the future, it seems to me the case falls within the rule as to speculative damages, which prevents this being considered by the court. 1 Joyce, Dam. § 91, p. 83; 3 Sedg. Dam. § 1086; 4 Suth. Dam. § 1071.

Speculative damages are those which rest on conjectural circumstances, or consequences which are contingent or merely problematical, possible, or apprehended, and concerning which the degree of the probability of their occurring as a result of the original injury does not amount to a reasonable certainty. In estimating damages in condemnation proceedings, mere future or prospective contingencies or speculative damages should not be considered, as the possibility of the unskilled or improper construction of a reservoir, or, where land is taken for a pipe line, damages for the possible leaking of the pipes. 1 Joyce, Dam. p. 3, § 24; Id. p. 2247, § 2190, and cases cited.

In Medbury v. New York & Erie R. R. Co., 26 Barb. 564–567, the court held:

"Compensation for the actual loss sustained is the fundamental principle upon which our law bases the allowance of damages. It will not, indeed, make this allowance upon a calculation of speculative profits; for this would be proceeding upon contingencies, and would involve the subject too much in uncertainty. * * * Nor will the law indemnify for remote or indirect losses."

Consequences which are contingent, speculative, or merely possible, are not to be considered in ascertaining damages. The measure of damages extends only to the direct, and not to remote or contingent, consequences, and must be determined as of the time of the award. Strohm v. N. Y., L. E. & W. R. R. Co., 96 N. Y. 305, 306; Coonley v. City of Albany, 57 Hun, 327, 10 N. Y. Supp. 512; Mott v. Lewis, 52 App. Div. 558, 65 N. Y. Supp. 31; Stowers v. Gilbert, 156 N. Y. 600, 51 N. E. 282; Matter of Brooklyn Union Elevated R. Co., 105 App. Div. 111, 93 N. Y. Supp. 924.

In holding that we cannot consider speculative damages to these 4.6 acres, I do not think the claimant is prevented from filing any subsequent claim for damages, if actionable injury be done thereon by the state. The state assumes the responsibility of appropriating as much land as is deemed necessary for the building of the canal. If it damages more land in the future, or injures the claimant beyond the present appropriation and the award made therefor, the claimant would have a subsequent claim for the loss suffered. In Hayden v. State, 132 N. Y. 533, 30 N. E. 961, the court held that an award made to a claimant for a definite quantity of land and water taken is no bar to the filing of a subsequent claim in case the state thereafter takes more than was covered by the first appropriation. This decision was cited with approval in Bell Telephone Co. v. Parker, 187 N. Y. 305, 79 N. E. 1008, and in People v. Fisher, 190 N. Y. 478, 83 N. E. 482.

In conclusion, I am of the opinion that the claimant has no paramount title as owner in the lands in the bed of Wood creek as against the state; that she is entitled to no damages from the state for the

state's using the bed of said stream and the waters thereof for the construction of the improved canal; that the claimant cannot recover speculative damages for the possible flooding in the future of the 4.6 acres mentioned; that the claimant is only entitled to recover the value of the 6.56 acres appropriated by the state, and such damages as the appropriation of said land has caused her.

Judgment accordingly.