(69 Misc. Rep. 145.)

#### ONTARIO KNITTING CO. v. STATE.

(Court of Claims of New York.   September 26, 1910.)

1. ADJOINING LANDOWNERS (§ 4*)—LATERAL SUPPORT—BUILDINGS.

    Where, pursuant to improvements of a canal belonging to the state, the towpath adjoining claimant's property was to be removed and a substantial canal wall built adjacent to the walls of claimant's building, the state was not bound in making its excavation for the canal to shore up claimant's property.

    [Ed. Note.—For other cases, see Adjoining Landowners, Cent. Dig. § 34; Dec. Dig. § 4.*]

2. EMINENT DOMAIN (§ 63*)—APPROPRIATION OF PROPERTY—VALIDITY—ABANDONMENT OF PLAN.

    Under Const. art. 1, § 6, declaring that private property shall not be taken for public use without just compensation, an appropriation of claimant's property for the purpose of underpinning the walls incident to the construction of canal improvements, anticipating the approval of the plans for the underpinning which were never approved, was void; the canal location being subsequently changed so as to obviate all necessity for the appropriation of any part of claimant's property.

    [Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 63.*]

3. EMINENT DOMAIN (§ 53*)—STATE ENGINEER—APPROPRIATION—AUTHORITY.

    The discretionary power of the state engineer to appropriate property for public use in the making of canal improvements conferred by Laws

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

1903, c. 147, as amended by Laws 1906, c. 365, did not authorize him to bind the state by any appropriation he saw fit to make, but only authorized such appropriations as in his judgment were necessary.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 134; Dec. Dig. § 53.*]

4. EMINENT DOMAIN (§ 66*)—NECESSITY OF TAKING PROPERTY—REVIEW.

The validity of each appropriation of private property for public use when attacked by either party is for the courts to determine.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 165–167; Dec. Dig. § 66.*]

5. EMINENT DOMAIN (§ 67*)—APPROPRIATION—NECESSITY—ESTOPPEL.

Where private property is appropriated by a state officer for public use, and is later not used or interfered with, and the appropriation is invalid, the state is not estopped to contest its validity.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 165–167; Dec. Dig. § 67.*]

Claim by the Ontario Knitting Company against the State of New York. Denied.

This claim is for the value of the land and buildings alleged to have been appropriated by the state of New York for the so-called Barge Canal. The property is situate in the city of Oswego, and lies between a private hydraulic canal and the old Oswego Canal, which the state proposes to enlarge into the Barge Canal. The amount of the claim is $1,019,051.78. The maps, plans, and specifications for the canals are required by statute to be made by the state engineer and submitted for approval to the canal board. The maps, plans, and specifications in this case provided for the construction of a canal along the line of the buildings of the claimant underpinning claimant's walls where they did not rest on a solid foundation. In this condition the plans were presented to the canal board for approval, but the canal board refused to approve of the underpinning of the walls; a question having arisen as to the right of the state to do so without an appropriation. The underpinning of the walls was eliminated from the contract, and, as thus changed, the contract was let. The state engineer by statute is authorized to appropriate such property as may in his judgment be necessary. After the plans had been thus changed and approved, he took the usual steps necessary to accomplish the appropriation of the claimant's land and buildings. Thereafter, the appropriation having been questioned, the canal board by resolution directed the state engineer either to appropriate only what was necessary to shore up the walls of claimant's buildings, or to move the canal so as to avoid any appropriation. The latter course was taken, and the canal is being built 12 feet away from the claimant's buildings. This claim was filed upon the theory that the appropriation was final, and the state contests the claim upon the ground that the engineer exceeded his authority in making the appropriation, and that the appropriation is void both under the statute and under the state Constitution. Other facts appear in the opinion.

Charles N. Bulger, Udelle Bartlett, and Simpson, Werner & Cardozo, for claimant.

Edward R. O'Malley, Atty. Gen., Daniel E. Brong, A. E. Tuck, and M. H. Quirk, for the State.

RODENBECK, J. The claimant is the owner of land in the city of Oswego, in Oswego county, in the state of New York, upon which there is an extensive knitting mill plant, the larger portion of which it is claimed was appropriated by the state, for which the claimant seeks compensation in the sum of $1,019,051.78. The main portion of the property

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was bounded by the old state Oswego Canal on the west and by a private hydraulic canal on the east; the intervening space between these two water ways being almost entirely occupied by buildings used in connection with claimant's business. Both the state canal and the hydraulic canal began at the Oswego river a short distance south of the property, being separated where the claimant's property is situated by a narrow strip of land upon which the claimant's predecessors had constructed the knitting mill in question; the hydraulic canal being controlled by headgates and the state canal by a lock. Across the hydraulic canal to the east is a piece of land rising from the hydraulic canal to First street, part of which is occupied by the Oswego Shade Cloth Company and part of which is owned by the claimant, giving it access by means of a bridge from its main buildings to First street. West of claimant's property lay the old Oswego Canal as stated and west of the canal the Oswego river, the old Oswego Canal at this point having been built along the easterly side of the Oswego river, with a towing path adjacent to claimant's property.

Chapter 147 of the Laws of 1903 of the state, known as the "Barge Canal Act," approved by a vote of the people of the state, authorized the issue of $100,000,000 in bonds for the improvement of the Erie, Oswego, and Champlain Canals, and therein provided that the route of the proposed Oswego Canal should follow at this point the route of the existing Oswego Canal subject to changes authorized by the statute (section 3). The statute also provides that the work should be done by contract, and that, before any contract should be made, the state engineer should divide the whole work into sections, and should make maps, plans, and specifications for the work, and a detailed estimate of the cost thereof, and that his estimate of the cost with the maps, plans, and specifications, "when adopted by the canal board," should be filed in his office, and a copy thereof filed in the office of the superintendent of public works. Laws 1903, c. 147, § 6. In pursuance of this statute, the state engineer in the year 1906 prepared maps, plans, and specifications for the portion of the improved canal which adjoined claimant's property on the west, and which section of the improvement became known as contract No. 35. According to the maps, plans, and specifications thus prepared the enlarged canal followed the line of the old canal at the location of the claimant's property, but the towing path which formerly separated the canal from the buildings was to be removed, and, because claimant's wall did not rest entirely on a rock foundation, the walls were to be underpinned, the easterly wall of the canal abutting directly on the west wall of claimant's buildings. These maps, plans, and specifications showed with many other details the exterior lines of the canal, including proposed appropriations for the construction and maintenance of the canal, and revealed the fact that no part of the canal itself was on claimant's land; the only connection being the requirement as to underpinning its walls, except a narrow strip of land, the title to which was disputed by the state.

The question as to the right to interfere with claimant's buildings by underpinning arose between the claimant and the state, and on December 24, 1906, the Attorney General of the state advised the deputy state engineer that the state had no right to go upon the land of

claimant without its consent to do the work called for under the proposed plans. Thereupon, on December 28, 1906, the maps, plans, and specifications for contract No. 35 were approved by the advisory board of state experts and later by the state canal board, with the exception of the work of underpinning called for on claimant's premises, which was eliminated from the contract by the words written upon the maps, plans, and specifications "not included in contract 35" and left for future consideration. A completed canal could have been constructed at this point under the proposed maps, plans, and specifications as changed, but it is urged by the claimant that the easterly wall of the canal which was about four feet wide at the top would not be sufficient to sustain the lateral pressure upon it in case of any interference by claimant with its walls or with the earth back of or under them.

The statute of 1903 (chapter 147) referred to, approved by the people, provided at the time of the alleged appropriation with reference to the appropriation of property necessary for the new canal as follows:

"The state engineer may enter upon, take possession of and use lands, structures and waters, the appropriation of which for the use of the improved canals and for the purposes of the work and improvement authorized by this act, shall in his judgment be necessary. An accurate survey and map of all such lands shall be made by the state engineer who shall annex thereto his certificate that the lands therein described have been appropriated for the use of the canals of the state. Such maps, survey and certificate shall be filed in the office of the state engineer, and a duplicate copy thereof, duly certified by the state engineer to be such duplicate copy shall also be filed in the office of the superintendent of public works. The superintendent of public works shall thereupon serve upon the owner of any real property so appropriated a notice of the filing and of the date of filing of such map, survey and certificate in his office, which notice shall also specifically describe that portion of such real property belonging to such owner which has been so appropriated. If the superintendent of public works shall not be able to serve said notice upon the owner personally within this state after making efforts so to do, which in his judgment are under the circumstances reasonable and proper, he may serve the same by filing it with the clerk of the county wherein the property so appropriated is situated. From the time of the service of such notice, the entry upon and the appropriation by the state of the real property therein described for the purposes of the work and improvement provided for by this act, shall be deemed complete, and such notice so served shall be conclusive evidence of such entry, and appropriation and of the quantity and boundaries of the lands appropriated. The superintendent of public works may cause a duplicate copy of such notice, with an affidavit of due service thereof on such owner, to be recorded in the books used for recording deeds in the office of the county clerk of any county in the state where any of the property described in such notice is situated, and the record of such notice and such proof of service shall be prima facie evidence of the due service thereof." Laws 1903, c. 147, § 4, as amended by Laws 1906, c. 365.

The state engineer did not take possession of any part of claimant's property, but on December 24, 1907, the division state engineer certified to a map embracing the property of claimant between the state canal and the hydraulic canal. On December 31, 1907, the special deputy state engineer certified that the land described on the map had been permanently appropriated by the state. On January 2, 1908, a copy of the map was filed in the office of the state superintendent of public works, who on January 8, 1908, caused a copy of the map and

notice of appropriation to be served upon claimant. On April 15, 1908, the superintendent of public works, questioning the necessity and legality of the appropriation, wrote to the state engineer, asking for the reasons for the appropriation, and, after some correspondence on the subject between the state engineer, deputy state engineer, and Attorney General, the canal board on April 30, 1908, adopted a resolution requesting the state engineer to appropriate only so much of claimant's property as was necessary to shore up its walls or to alter the plans so as to avoid any appropriation. Thereafter the maps, plans, and specifications were changed by moving the canal to the west, thus obviating the necessity for the underpinning of claimant's walls, and at no time has claimant's property been actually taken possession of by the state or any construction made or material placed thereon. Thereafter claimant filed this claim, which the state seeks to defeat on the ground that the appropriation was unnecessary and unauthorized, and, while all the formalities of the statute relating to appropriations seem to have been complied with except that the state never actually entered upon or took possession of any part of claimant's property, claimant insists that the service of the notice of appropriation upon it was final and conclusive, and that the alleged appropriation cannot be attacked by the state.

From this brief statement of the facts and from the other evidence introduced upon the trial, it appears that there was no necessity for the appropriation of claimant's property. The line of the canal shown upon the maps, plans, and specifications did not include any of the claimant's property, so that no excuse for the appropriation can be found in the description of the canal and its works as shown upon the maps, plans, and specifications except as to an insignificant portion the title to which is disputed by the state. There was nothing on the maps, plans, and specifications or any evidence whatever that the state desired at any time to do anything more than underpin claimant's walls. The towing path of the old canal which adjoins its property on the west was to be removed, and a substantial canal wall was to be built adjacent to claimant's walls. In making its excavation for the canal, there was no obligation on the part of the state to shore up claimant's property. 1 Cyc. p. 766. Nevertheless the claimant refused to allow the work to proceed, and the underpinning was eliminated from the contract, and all necessity for the appropriation of any part of the property ceased. Unless there was some distinct purpose for which the property or some part of it was needed, there was no authority for taking more than was shown within the lines of the canal and the maps and plans. The portion of the canal contract relating to underpinning was eliminated, and never had been approved by the canal board as required by the statute, and there never was any necessity for an appropriation even for underpinning. When the underpinning was eliminated from the contract, there were no maps, plans, or specifications for the underpinning upon which any legal appropriation could be made. The maps, plans, and specifications were required to be approved by the canal board before the work could be let, and no legal appropriation could be made until this approval was had. When the alleged appropriation was made, the situation was the same as if

the work of underpinning had not been planned. The state engineer was not called as a witness in the case, but there appears in evidence a letter addressed to him by the deputy state engineer which may be assumed to embody the reasons which prompted the state engineer to make the appropriation. One of the reasons stated in this letter is that the easterly wall of the canal as planned was not sufficiently strong to hold the water in the canal without lateral pressure against the walls of the building, and that, if at any time there should be any excavation made on the property adjacent to the canal wall, it would result in the destruction of the wall. This difficulty could have been obviated by strengthening the wall of the canal, and is not a justification for the appropriation of the entire property of the claimant. He also urges that any further encroachment of the canal upon the bed of the river would cause the water to back up in the tail races of the mills on the opposite side of the river, thereby incurring claims for damages against the state, but this reason anticipates damages which may never be claimed or recovered, and it not a sound reason for the appropriation of the entire property. The final ground advanced is that the wall of the canal is to be only four feet wide on the top, and that there would be no available room for terminal facilities; but no appropriation for terminal facilities could be made by the state engineer, except for some distinct purpose approved by the canal board and "for boats tying up while waiting to pass the locks." The entire property was unnecessary. The superintendent of public works requested the state engineer to give his reasons for the appropriation, but no reply directly was made thereto other than the letter referred to of the deputy engineer to the state engineer which was presented at a meeting of the canal board. The plans that were finally carried out provided for moving the easterly wall of the canal to the west of claimant's property, leaving an intervening space of earth and obviating all necessity for the appropriation of claimant's property even for underpinning. At no time was there any legal authority for interfering with claimant's walls, and, when the alleged appropriation was made, the state engineer anticipated the approval of the plans for the underpinning, and acted arbitrarily and without authority, and the alleged appropriation was entirely ineffectual and void.

The discretionary power of the state engineer to make the appropriation did not give him the power to bind the state by any appropriation that he saw fit to make. In making the appropriation the state engineer was not only limited by the statute under which he was acting (Laws 1903, c. 147), but he as well as the state itself was controlled by the provisions of the state Constitution (article 1, § 6). The statutes of the state forbade the appropriation. The state had delegated the power to make appropriations for the new canal, and by statute had provided that the state engineer might enter upon, take possession of, and use lands, structures, and waters, the appropriation of which for the use of the canals should "in his judgment be necessary." Laws 1903, c. 147, as amended by Laws 1906, c. 365. This language did not give the state engineer unrestricted authority to make appropriations, but limited him to such as were in his judgment "necessary." The maps, plans, and specifications for the improvement described a

certain route, and he was confined to that route. They also show the exterior lines of the canal, and he could no more go outside of those lines except for some specified public purpose than he could select another route entirely. If he goes outside of these lines for spoil area, necessary canal structures, or other necessary purposes, it must distinctly appear that the land is necessary, and, if not necessary, no legal appropriation can be made. He cannot act arbitrarily. Wherein his acts are reasonable they are valid, and wherein they are unreasonable they are void. He must exercise a sound discretion. Each case must stand upon its own facts. In these cases there is a middle ground that is debatable, and on one side lie those cases where the appropriation is clearly valid and on the other those where they are clearly void. The validity of each appropriation when attacked by either party is for the courts, and it is for the courts to say whether or not the appropriation was made in the exercise of a sound discretion and in good faith. Sixth Avenue Railroad Company v. Kerr, 72 N. Y. 332; Jerome v. Ross, 7 Johns. Ch. 315, 11 Am. Dec. 484. Even if it be assumed that underpinning was required, such work did not justify an appropriation of the entire property. Sixth Avenue Railroad Company v. Kerr, 72 N. Y. 330; Heyneman v. Blake, 19 Cal. 579; New Orleans Pacific Railway Company v. Gay, 32 La. Ann. 471. Where a statute authorized a state engineer to appropriate such property as in his judgment is necessary, he is required to act in good faith and with a sound discretion, and not arbitrarily or capriciously, and an appropriation made without the exercise of a sound judgment which transcends the necessity of the public use is unauthorized, illegal, and void.

The state Constitution forbade the appropriation of the entire property. The Constitution says that no person shall "be deprived of life, liberty or property without due process of law; nor shall private property be taken for public use without just compensation." Article 1, § 6. This is a restriction upon the authority of the state itself to take property under its power of eminent domain. The state could not invest the state engineer with discretion to go beyond the language of the Constitution. The power of eminent domain is a sovereign right existing independently of the Constitution, and the language of the Constitution is a restriction upon this right. Under its terms, property can only be taken for public use. If the taking does not serve a useful public purpose, it is unauthorized. Likewise it can be taken only when "necessary." Whenever property is taken that is not necessary the constitutional limitation has been violated. It is open to inquiry, therefore, under the mandate of the Constitution itself, whether or not the appropriation in this case is for a public purpose, and whether or not it is necessary. If it is not necessary, it cannot be for a public purpose, but must be for some other purpose not authorized. "The Constitution," says Chief Judge Savage in Matter of Albany Street, 11 Wend. 151 (25 Am. Dec. 618), "by authorizing the appropriation of private property for public use impliedly declares that for any other use private property shall not be taken from one and applied to another." If private property can be taken that is not necessary for public use, where will the line be drawn? Such a power would open the door for an easy evasion of the Constitution, and make

possible the appropriation of private property for private purposes. It is because of the Constitution that the state and municipal bodies in appropriating property for highway purposes take to the lines of the highway, and, if the lines intersect a building, appropriate, not the whole of the building, but what is necessary for the highway, and no more. The state cannot take the whole of a building, though it would be more profitable than cutting off a piece of it, for such a taking would not be for a public purpose, but would impliedly be for some other purpose. It is no justification for an appropriation that it is more profitable to take the whole than a part, or that the state can sell what it does not need. If such a course could be taken, there would be no force in the constitutional limitation, and private property would be without the protection that is guaranteed to it by the Constitution. To sustain an alleged appropriation, therefore, it must appear, if disputed, that the property is necessary, and that it is taken for the public use, both of which questions are subject to review by the courts.

The rule in this state is that the action of the Legislature as to the nature of the use to which the property is to be put—that is, as to whether or not it is a public use (Matter of Deansville Cemetery Ass'n, 66 N. Y. 569, 23 Am. Rep. 86; Matter of Niagara Falls & Whirlpool R. R. Co., 108 N. Y. 375, 15 N. E. 429; Waterloo Woolen Mfg. Co. v. Shanahan, 128 N. Y. 345, 28 N. E. 358, 14 L. R. A. 481; Pocantico Waterworks Co. v. Bird, 130 N. Y. 249, 29 N. E. 246)—as well as the exercise of the power to condemn—that is, as to the necessity of the public use (N. Y. & H. R. Co. v. Kip, 46 N. Y. 546, 7 Am. Rep. 385; N. Y. & H. R. R. Co. v. M. G. L. Co., 63 N. Y. 326; Matter of Union E. R. R., 113 N. Y. 275, 21 N. E. 81; Rensselaer & Saratoga R. R. Co. v. Davis, 43 N. Y. 137; Matter of N. Y. C. & H. R. R. Co., 77 N. Y. 248; Matter of South Beach R. Co., 119 N. Y. 141, 23 N. E. 486)—are reviewable by the courts, for, if the use be not public or the necessity does not exist, the taking is prohibited by the Constitution. This rule also prevails in other state courts and in the federal courts, numerous citations to the decisions of which courts can be found in the text-books on eminent domain.

Lewis in his work on Eminent Domain says:

"We think that the Constitution impliedly forbids the taking for public use of what is not necessary for such use, and therefore, though the Constitution and statute are silent on the subject of necessity, that the power to take is, in every case, limited to such and so much property as is necessary for the public use in question. * * * Necessity and a public use must in all cases exist as a condition precedent to the legal right to enforce the remedy given to condemn, and the company (condemnor) is not the judge of the existence of the necessity, or of the character of the use; both belong to the courts." Section 600.

Nichols in his work on Eminent Domain says:

"When it is decided to take land by eminent domain, what land shall be taken and how much are matters in the discretion of the Legislature, though land that manifestly cannot be used cannot be taken. * * * Whether there is any necessity whatever is, however, a judicial question, as a taking without necessity in such a case would be unauthorized." Section 291.

Randolph in his work on Eminent Domain says:

"If there is no statutory direction as to the quantity of property to be condemned, the expropriator may take as much as is necessary for the accomplishment of the purpose. * * * The right of selection is subject, however, to judicial restraint, for the taking of more property than is necessary for the accomplishment of the. purpose is, in effect, a taking for private use." Section 185.

Cooley in his work on Constitutional Limitations says:

"The taking of property must always be limited to the necessity of the case, and consequently no more can be appropriated in any instance than the proper tribunal shall adjudge to be needed for the particular use for which the appropriation is made. When a part only of a man's premises is needed by the public, the necessity for the appropriation of that part will not justify the taking of the whole, even though compensation be made therefor. The moment the appropriation goes beyond the necessity of the case it ceases to be justified on the principles which underlie the right of eminent domain." (3d Ed.) p. 779.

In Sixth Avenue R. R. Co. v. Kerr, 72 N. Y. 330, 332, the court said:

"The state in the exercise of the right of eminent domain, or a corporation having the delegated power, is not bound to take the entire estate, but may take, and strictly should take, only such an interest and right as is necessary to be acquired to accomplish the public purpose in view. An easement merely or a partial interest, or the right to a temporary or permanent use of property, as well as the entire estate and interest, may thus be acquired as the public service may demand, and, so long as the owner is compensated for the damages sustained, he has no cause of complaint, but he might, if more property or a larger estate or interest was taken than was required for public use, contend that his rights of property had been illegally invaded."

In Stuyvesant v. Mayor, 7 Cow. 588, 606, the court said:

"Neither can the state or general government transcend the powers conferred by their Constitutions. Every act beyond the Constitution is void, and may be declared so by our courts of justice, whether it emanate from a general or local Legislature. An unwarrantable interference with private property is equally unconstitutional and void, whether by the state Legislature or a corporation. By neither can it be attached without necessity; and then, if taken, it must be upon just compensation."

In Bennett v. Boyle, 40 Barb. 551, 554, the court said:

"The law of eminent domain extends to lands needed for the public use, and no further; private property may be taken by the state, and the title of the owners divested for this purpose, and for no other. Within this limitation the power of the Legislature is indisputable, but further than this it cannot go. The use to which it is to be appropriated must be a public use. The law was so far relaxed by the Constitution of 1846 as to allow private roads to be opened through private property. Until that time not even a right of way could be taken from one man and given to another. (* , * * Fourth avenue was to be enlarged so as to be of a uniform width of 120 feet. For this purpose a strip of land 50 feet in width for a part of the distance, and 40 feet for the residue of the distance, was taken by force of the act to which I have referred, and added to the street. The powers and jurisdiction of the commissioners were limited and restrained to the lines of the avenue, as enlarged. Beyond and outside of them they could exert no power or authority whatever. It was the value of the lands taken and the improvement thereon, with the damages to be sustained by the owners by reason thereof, that the commissioners were to estimate and ascertain. This was their office, and they had no other. Buildings, such as those upon the mortgaged premises, are part and parcel of the freehold and pass from the owner to another

or to the public in all ordinary transfers, either voluntary or coercive, as the land itself passes, and as a part thereof. Where land is taken for the uses of a street or avenue, such buildings and parts of buildings as are within the lines of the proposed improvement pass by force of the statute and the proceedings taken under it to the public authorities with the land taken, the owners being thereby divested of their title, which is resumed by the public, while the residue of such buildings, or parts thereof, beyond and outside of such lines, remain to the owners with the land upon which they stand, the title thereto being untouched and unaffected by the statute and the proceedings taken under it."

In Embury v. Conner, 3 N. Y. 511, 53 Am. Dec. 325, under a statute expressly authorizing it to do so, the city of New York without· objection acquired in 1838 in the widening of Ann street the whole of a lot only part of which was within the line of the proposed street, subsequently sold the remainder of the lot, and 20 years thereafter a claim was set up by the heirs of the original owner who had been paid for the whole lot that the city could not take more than was necessary, and were defeated in this claim, as they should have been under the facts in the case.

In Matter of Albany Street, 11 Wend. 149, ·152, 25 Am. Dec. 618, the city of New York under the same statute involved in Embury v. Conner, 3 N. Y. 511, 53 Am. Dec. 325, upon a motion to confirm the report of the commissioners for the widening of Albany street who had taken more land than came within the lines of the improvement, the court held that against the objection of the ·owner such an appropriation could not be made, saying:

"The Constitution, by authorizing the appropriation of private property to public use, impliedly declares that for any other use private property shall not be taken from one and applied to the private use of another. It is in violation of natural right, and, if it is not in violation of the letter of the Constitution, it is of its spirit, and cannot be supported. This power has been supposed to be convenient when the greater part of a lot is taken, and only a small part left, not required for public use, and that small part of but little value in the hands of the owner. In such case the corporation has been supposed best qualified to take and dispose of such parcels, or gores as they have sometimes been called; and probably this assumption of power has been acquiesced in by the proprietors. I know of no case where the power has been questioned, and where it has received the deliberate sanction of the court. Suppose a case where only a few feet or even inches are wanted from one end of a lot to widen a street, and a valuable building stands upon the other end of such lot, would the power be conceded to exist to take the whole lot, whether the owner consented or not? Or suppose the commissioners had deemed it expedient and proper in this case, in the language of the statute, to take the whole of the churchyard, the act would have been equally within the letter of the statute with their act in the present case, and yet no one would suppose that the Legislature ever intended to confer such a power. The quantity of the residue of any lot cannot vary the principle. The owner may be very unwilling to part with only a few feet; and I hold it equally incompetent for the Legislature thus to dispose of private property, whether feet or acres are the subject of this assumed ·power. I am clearly of the opinion that the commissioners have no right to take the strip of land in question against the consent of the corporation of Trinity Church."

Where, therefore, the state Constitution provides that private property shall not be taken for public use without just compensation, and that no person shall be deprived of property without due process of law, and a statute for the construction of a state canal provides that

the state engineer shall take such property as in his judgment shall be necessary and the lines of the canal are fixed at the time of the appropriation, his judgment must be limited to the actual necessities of the canal as approved and legally planned, and an appropriation outside of the lines of the canal, though consented to by the owner, not necessary for spoil structures, or other public purposes in connection with the construction and operation of the canal, is unauthorized, illegal, and void.

The state is not estopped from raising the question as to the validity of the appropriation. The provisions in the Constitution referred to were inserted for the protection of private property, but they also protect the state by giving notice of the limitation placed upon it and its agents in taking private property. If the state exceeds its powers, its acts are void, and the question as to the validity of its acts or those of its agents can be raised by any interested person including the state itself. There is no estoppel because it has vested a discretionary power in its agent. He must come within the limits of his actual authority (Delafield v. State, 26 Wend. 192; Village of Fort Edward v. Fish, 156 N. Y. 366, 50 N. E. 973; State of Michigan v. Phœnix Bank of New York, 33 N. Y. 11; Richardson v. Crandall, 47 Barb. 367; Wyman's Administrative Law, § 72), or his acts are void and, when he is given discretion, he must exercise a sound and not an arbitrary judgment (People v. Fisher, 190 N. Y. 468, 83 N. E. 482). Everyone is supposed to know the limits of a public agent's authority, and deals with him in excess of that authority at his peril. McDonald v. Mayor, 68 N. Y. 23, 23 Am. Rep. 144. If the agent exceeds his authority or acts in bad faith or in the case of an appropriation expresses an unsound judgment where discretion is vested in him, the state is not bound by his act (Litchfield v. Pond, 186 N. Y. 66, 78 N. E. 719), and the state may raise the question when his acts are in issue (State v. Bevers, 86 N. C. 592). Where discretion is vested in him, his acts must not be the result of mere personal desires, but an honest and sound expression of judgment prompted by the discharge of a public duty, and, when it is not such an expression, the state may go back of his acts, and show the facts in repudiation of his action. Rose v. Stuyvesant, 8 Johns. 426; President, etc., v. Patchen, 8 Wend. 47. In Poindexter v. Greenhow, 114 U. S. 270, 290, 5 Sup. Ct. 903, 914, 962 (29 L. Ed. 185), the court says:

"The state itself is an ideal person, intangible, invisible, immutable. The government is an agent, and, within the sphere of the agency, a perfect representative; but outside of that it is a lawless usurpation. * * * It is also true, in respect to the state itself, that whatever wrong is attempted in its name is imputable to its government, and not to the state, for, as it can speak and act only by law, whatever it does say and do must be lawful. That which, therefore, is unlawful because made so by the supreme law, the Constitution of the United States, is not the word or deed of the state, but is the mere wrong and trespass of those individual persons who falsely speak and act in its name."

Judge Miller said in Gibbons v. United States, 8 Wall. 269, 274, 19 L. Ed. 453:

"No government has ever held itself liable to individuals for the misfeasance, laches, or unauthorized exercise of power by its officers and agents. In

the language of Judge Story, 'it does not undertake to guarantee to any person the fidelity of any of the officers or agents whom it employs, since that would involve it in all its operations in endless embarrassments, and difficulties and losses, which would be subversive of the public interests.'"

### Bishop in his work on Contracts says:

"The government is never estopped, as an individual or private corporation may be, on the ground that the agent is acting under an apparent authority which is not real; the conclusive presumption that his powers are known rendering such a consequence impossible. So that the government is bound only when there is an actual authorization." Section 993.

### Throop in his work on Public Officers says:

"Where an officer exceeds his powers in such a case, the body for which he acts, whether it is the state, a municipal corporation, or other public organization, is not bound by his acts. * * * The government is never estopped on the ground that its agent is acting under an apparent authority which is not real." Section 551.

It follows from the foregoing that the appropriation of the property of the claimant was unnecessary for any public use, and that the state engineer in attempting to make the appropriation exceeded the authority conferred upon him by the statute and the limitations placed upon him by the state Constitution, and the claim must therefore be dismissed.

Judgment entered accordingly.