In the matter of the application of the NEW YORK CENTRAL &c. RAILROAD COMPANY, to acquire lands of CHESTER JOHNSON.

### AND THREE OTHER CASES.

Where it satisfactorily appears, upon an application by a railroad company for leave to acquire additional lands, 1. That the parties have not been able to agree upon the price of the land sought; and 2. That the lands are required by the company for the purposes of its incorporation, and to enable it to suitably build embankments, and provide suitable drainage, and to keep its road in proper condition to accomplish the purposes of its incorporation, effect should be given to the general railroad act of 1850, and the amendment of 1869, relative to the acquisition of additional lands by railroad companies, when necessary; and the petitioner be allowed to take an order appointing commissioners of appraisal.

Section 28 of the general railroad act of 1850, authorizing companies formed under that act to lay out their roads "not exceeding six rods in width," relates to the first laying out, and the first construction, of a railroad; and must be read in connection with § 21 of the same act, with the amendment of 1869 (chap. 237) added thereto; which amendment permits lands to be subsequently taken by a company, in addition to what it was originally entitled to acquire, when laying out its road, if such additional lands shall be required for the purposes of the incorporation.

It cannot be said that the "purposes of its incorporation" are accomplished when a road is constructed, and in operation, with two tracks. The company is bound, by express enactment, to furnish to passengers and freighters the means of transferring passengers and freight in accordance with the statutory requirement.

This duty has been cast upon the company, and to accomplish it, the road must keep up with the growing demands for further facilities.

The statute authorizes a road, coming within its terms, to acquire such lands as are necessary to its operation, though when acquired and added to those already owned, the road would be more than six rods in width.

The act must be so construed as to give effect to its provisions, and so as not to defeat the object of the legislature.

THIS application is made upon a petition verified by one of the directors of the railroad company, and a notice of motion, &c.

The contestant appeared, and was allowed to file a denial of the allegations of the petition, and to give evidence to disprove the allegations stated in the petition. The railroad company also put in some evidence

in reply to the contestant's proof; and admissions were made showing that the business of the company has increased largely in the last five years, and that the tons of freight carried in 1870 were over 769 millions, in 1871 over 888 millions, and in 1872 over 1,020 millions; and the oral evidence also indicates that the business of the road has been upon the increase; that additional tracks have been laid upon some parts of its line; and that embankments for new tracks have been constructed either way from Johnson's lands, and it appears that the road is about completing two additional tracks along its line from Utica to Syracuse, and from Albany to Buffalo.

*Johnson & Prescott*, for the railroad company.

*Scott Lord*, for the contestants.

HARDIN, J. The petition in this case is verified in the language commonly in use in this court.

Certain facts are alleged to be upon information or belief, and the source of the information is pointed out, and the allegations, taken in connection with the proof given upon the hearing, must be held sufficient, *prima facie*, to establish the allegations needed to authorize the application.

The contestant was allowed to disprove any of the allegations of the petition.

Upon all the proofs before the court, the conclusions are reached,

1. That the parties have not been able to agree upon the price of the lands sought.

2. That the lands are required by the company for the purposes of its incorporation, and to enable it to suitably build embankments, and provide suitable drainage, and to keep its road in proper condition to accomplish the purposes of its incorporation.

The learned counsel for the contestant urges upon the attention of the court, the provision of section 28 of the general railroad act of 1850. That section declares that " every corporation formed under the act " * * * " shall have power to lay out its road not exceeding six rods in width, and to construct the same." * * * That provision evidently relates to the first laying out, and the first construction of a railroad. But it must be read in connection with section 21 of the same act as it now stands, with the amendment of 1869 (chap. 237) added thereto. It is provided "if, at any time after the construction of any railroad," * * * " such road shall require, for the *purposes of its incorporation,* or for the purpose of running or operating any railroad so owned or leased by such company, ANY *real* estate in ADDITION to what it *has already* acquired," * * * " *such* company may acquire such additional real estate." Here is a provision which permits lands to be taken in addition to what a company was originally entitled to acquire when laying out its road. It appears by the evidence that the road owns six rods in width at the point in dispute, and can build its additional tracks upon its lands, and that the slope of the embankment will descend upon the lands of Johnson; and this statute seems to provide for such cases — to permit the acquisition of " such additional real estate "— for the purposes of its incorporation.

Having laid the road, originally, six rods wide, the additional power, or power to acquire *additional lands*, is given by the amendment of 1869.

But it is said that the purposes of its incorporation are accomplished — that a railroad is in operation with two tracks from Utica to Syracuse, and that the purposes of the incorporation of the railroad company are fully answered.

The company is bound, by express enactment, to furnish to passengers and freighters the means of trans-

ferring passengers and freight in accordance with the statutory enactment.

This duty has been cast upon the company, and to accomplish it the road must keep up with the growing demands for further facilities. In the language of DENIO, J., "the company must not be in fault in providing *sufficient accommodation* for the general traffic of their road under ordinary circumstances." (*Wibert* v. *N. Y. & Erie R. R. Co.*, 2 *Kernan*, 250.) To furnish "sufficient accommodation for the general traffic of the road," its general business may be said to be the "purpose of its incorporation." And to meet the increasing demand upon the road, —to fulfil "the purposes of its incorporation"— the act of 1869 declares it shall have power to acquire *additional* lands. So, too, that act provides that it shall have power to acquire lands "which may hereafter be rendered necessary for any *structures* in use, or for any other purpose necessary to the operation of such railroad."

The statute is very broad and comprehensive in its terms, and seems to authorize a road coming within its terms to acquire such lands as are necessary to its operation, though when acquired and added to those theretofore owned, the road would have more than six rods in width.

The act must be so construed as to give effect to its provisions, and so as not to defeat the object of the legislature. (*Matter of New York & Harlem R. R. Co.* v. *Kip*, 46 *N. Y.*, 546.) ALLEN, J., in the case cited, says of the act of 1869, that "the language of the act is very general and comprehensive. If lands are required for any of the purposes of the incorporation * * * they may be taken *in invitum*." And at page 553 of the same case, he adds: "The legislature has committed to the discretion of the corporation the selection of lands for its uses, and if the necessity of lands for such purposes is shown, and the lands sought are

suitable, *the courts* cannot control the exercise of the discretion, or direct which of several plots of ground shall be taken."

Nothing appeared upon the hearing of this case, to lead the court to conclude that the necessities of this road, and its duty to keep up with the increased demands made upon it by the public in respect to suitable accommodations for passengers and freight, do not render it necessary for the road to acquire the lands described in the petition. The statute of 1869 must therefore have effect given to it, and the petitioner be allowed to take an order appointing commissioners.

Orders may be entered, upon serving a copy of this opinion, appointing B. J. Beach, Geo. Williams and Luther Guiteau as commissioners.

Ordered accordingly.

[ONEIDA SPECIAL TERM, October, 1873. *Hardin,* Justice.]