ERIE R. CO. v. STEWARD et al.

(Supreme Court, Appellate Division, Second Department. May 31, 1901.)

1. RAILROADS—EMINENT DOMAIN—PURPOSES FOR WHICH POWER MAY BE EXERCISED—STATUTES.

Though Gen. Laws (Railroad Law) art. 1, § 4, subd. 2, authorizing a railroad corporation to acquire by condemnation such real estate and property as may be necessary for the construction, maintenance, and accommodation of the road, is a general delegation of the power of eminent domain, the exercise of such power must be justified under some subsequent and specific provision of the statute.

2. SAME.

A railroad company maintaining and operating its road over a certain route for years cannot take land for the purpose of constructing another main road parallel to the constructed road, one-half mile therefrom, under Gen. Laws (Railroad Law) art. 1, § 4, subd. 2, empowering a railroad corporation to condemn such real estate and property as may be necessary for the construction, maintenance, and accommodation of the road, since such additional line is not necessary for the operation of the road.

3. SAME.

A railroad company maintaining and operating its road over a certain route cannot take land for the purpose of constructing another main road parallel to the constructed road, one-half mile therefrom, to save expense to the road and facilitate its business, under Gen. Laws (Railroad Law) art. 1, § 7, subd. 3, authorizing a railroad company to condemn land where it shall require any further rights for switches, turnouts, or widening its embankment.

4. SAME.

A railroad company maintaining and operating its road over a certain route cannot take land for the purpose of constructing another main road parallel to the constructed road, one-half mile therefrom, to save expense and facilitate its business, under Gen. Laws (Railroad Law) art. 1, § 7, subd. 4, providing that a railroad may condemn land where it shall require further rights to lands for the flow of water occasioned by railroad embankments, or for any other purpose necessary for the operation of the road, since the purpose contemplated by the statute relates to some adjunct necessary to the road as it is located and operated.

Appeal from special term, Orange county.

Condemnation proceedings by the Erie Railroad Company against Mary Anna Steward and others. From an order of the appellate di-

vision of the supreme court dismissing defendants' appeal, and from a judgment granting condemnation, defendants appeal. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

Howard A. Taylor (Origen S. Seymour and Wolcott P. Robbins, on the brief), for appellants.

Charles F. Brown (Henry Bacon, on the brief), for respondent.

JENKS, J. The plaintiff seeks to take property in invitum. Therefore it must show legislative authority. In re Niagara Falls & W. Ry. Co., 108 N. Y. 375, 15 N. E. 429; Railroad Co. v. Davis, 43 N. Y. 137, 146. The statute which is alleged to confer it is strictly, and not liberally, construed. In re Poughkeepsie Bridge Co., 108 N. Y. 483, 15 N. E. 601; In re Amsterdam Water Com'rs, 96 N. Y. 351, 357. In Railroad Co. v. Kip, 46 N. Y. 546, 7 Am. Rep. 385, it is said that such a statute must receive "a reasonably strict and guarded construction, and the powers granted will extend no further than expressly stated, or than is necessary to accomplish the general scope and purpose of the grant. If there remains a doubt as to the extent of the power, after all reasonable intendments in its favor, the doubt should be solved adversely to the claim of power." The plaintiff asserts power under several provisions of the statutes:

1. It contends that it may condemn this land under the provision of the railroad law which authorizes such a corporation "to take voluntary grants of realty and other property as shall be made to it to aid in the construction, maintenance and accommodation of its railroad, and to acquire by condemnation such real estate and property as may be necessary for such construction, maintenance and accommodation." This provision is a subdivision of section 4, which itself expressly makes such power "subject to the limitations and requirements of this chapter." There is force in the contention that this expression may be understood as a general legislative declaration that the power of eminent domain is delegated to a railroad corporation; but, to justify the exercise of this power, it must be shown that the proposed action is within some subsequent and specific provisions of the statute. If this proceeding cannot be justified under the general provision, when read with the subsequent limitations and requirements, this affords no argument for the contention that the general provision can or should be freed therefrom; for, if no authority can be shown for this particular condemnation, then there is but a casus omissus. If, however, this provision is an isolated and a complete authority for the exercise of eminent domain, the question then presented is whether the scheme of the plaintiff is within the purview of its terms. The apt words are "as may be necessary for the construction, maintenance and accommodation," referring to the preceding phrase, "construction, maintenance and accommodation of its railroad." The difficulty that confronts the plaintiff at the outset is the fact that long ago this corporation located its route, and thereafter and for many years past has operated its road upon that route so located. How, then, can it contend that the land aimed

.at is necessary in the construction or maintenance or accommodation of its road? It may be that the proposed work, when executed, would properly be described as "construction," its continuance as "maintenance," and its use as "accommodation"; ·but this is far from the proposition that the defendants' land is. necessary for the construction, maintenance, and accommodation of this railroad as it exists, with its route, and its tracks thereon, and its road· in operation, all for many years past. The land is. not necessary for the·construction ·or the maintenance or the accommodation of the railroad, as these terms are used in the statute. It is sought for a far different purpose. It is intended to lay thereon the tracks of a different route, additional to the road that has been operated, is now operated, and that is to be operated. In the words of its chief engineer, it is an attempt to "maintain the main road on two different lines," both to run in the same general direction for nearly three miles, and yet half a mile apart. So far as the building of the proposed line is a second and further location of a second and further route, I have not seen the statute that permits the plaintiff to do this thing, and the authorities are against it. In re Poughkeepsie Bridge Co., supra; Mason v. Railroad Co., 35 Barb. 373; Hudson & D. Canal Co. v. New York & E. R. Co., 9 Paige, 323 (both cited and approved in Re Poughkeepsie Bridge Co., supra); People v. Railroad Co., 45 Barb. 73; Wood, R. R. (Minor's Ed.) § 271; Tayl. Corp. §§ 162a, 164; Brigham v. Railroad Co., 1 Allen, 316; Brooklyn Cent. R. Co. v. Brooklyn City R. Co., 32 Barb. 366. In re Staten Island Rapid-Transit Co., 103 N. Y. 251, 8 N. E. 548, the only case cited by the respondent upon this contention, is not authority. The sole question raised in that ·case was the sufficiency of the evidence to show that the property sought to be condemned was required for the purpose of the corporation, while the matter decided was that it was not necessarily a defense to condemnation that the land was not needed for present and immediate purposes.

2. It is contended that this land may be taken for this proposed double-track route of nearly three miles long under the powers conferred by section 7, subd. 3, of the railroad law, which reads:

"Where it shall require any further rights to lands or the use of lands for switches, turnouts, or for filling any structure of its road, or for constructing, widening, or completing any of its embankments or roadbeds, by means of which greater safety or permanency may be secured, and such lands shall be contiguous to such railroad and reasonably accessible to the place where the same are to be used for such purpose or purposes."

Clearly the proposed work is not in constructing or widening or in completing its embankment or roadbed, for the tracks are to be laid at a mean distance of half a mile from the present roadbed. The purpose contemplated is not a "switch," which is defined as a "device for moving a small section of track so that rolling stock may be run or shunted from one line of track to another"; and, "in railroads, in its simplest form, two· parallel lengths of rails joined together by rods, pivoted at one end, and free to move at the other end, forming a part of the track at its junction with a branch or siding." Stand. Dict.; Cent. Dict. Nor is the proposed construction a "turn-

out," which is "a short railway side track, upon which one train may be shunted to permit another to pass on the main track"; "a short side track on a railway, designed to enable one train to pass another." Id. The new tracks are to be straight where the present tracks are tortuous, and the final purpose is to use all four rails for the traction of cars, to the greater dispatch of business, and to the saving in part of the expense of a pusher engine, which is required on the present track because of its sharp curves and steep grades. Mr. Moore, the plaintiff's engineer, gave a practical definition of the construction that incidentally distinguished, when he testified:

"The cut-off will be connected with the present tracks by a switch or turnout. That connection is what is, in railroad parlance, a switch or a turnout."

The construction seems to be what is technically called a "cut-off." This is defined to be a shorter and straighter road by which the length of a course or passage is reduced. Stand. Dict.; Cent. Dict. The respondent's engineer, Mr. Parsons, thus describes it; and "cut-off railroad" is the descriptive term employed by the plaintiff's chief engineer, Mr. Buchholz, in his letter, defendants' Exhibit B. Haight, J., in his dissenting opinion in People v. Board of Railroad Com'rs, 160 N. Y. 202, 213, 54 N. E. 697, in speaking of this very construction, says that the Erie Railroad devised a plan for a "cut-off road."

3. It is contended that the plaintiff may proceed under subdivision 4 of section 7 of the general railroad act. Section 7, in part, provides that:

"It shall have such rights, also, in the following cases: * * * (4) Where it shall require any further right to lands or to the use of lands for the flow of water occasioned by railroad embankments or structures now in use, or hereafter rendered necessary, or for any other purpose necessary for the operation of such railroad, or for any right to take and convey water from any spring, pond, creek or river to such railroad, for the uses and purposes thereof, together with the right to build or lay aqueducts or pipes for the purpose of conveying such water, and to take up, relay and repair the same, or for any right of way required for carrying away or diverting any water, stream or floods from such railroad for the purpose of protecting its road or for the purpose of preventing any embankment, excavation or structure of such railroad from injuring the property of any person who may be rendered liable to injury thereby."

It is quite evident from the nature of the context and the wording of the phrase that the purpose contemplated relates to some adjunct necessary to the road as it is located and operated, such as land for a yard or for a freight station, or a site for a more capacious passenger station. New York Cent. & H. R. R. Co. v. Metropolitan Gaslight Co., 63 N. Y. 326, 330, 331; End. Interp. St. § 86. There is a manifest distinction between the construction and the operation of a road, and I think that new construction of this character—the building of a cut-off road—does not fall within the words "or for any purpose necessary for the operation of the road." If the press of business or the economical administration of the corporate affairs can find legislative warrant in the words "necessary" and "operation" for the exercise of eminent domain over lands, for the building of such a projected cut-off for 3 miles, why not, then, if the same "necessity" exist, for 30 miles, or why may not a corporation under such

a plea based upon such authority gridiron town or country with its rails? The learned counsel for the plaintiff cites numerous authorities. In re New York Cent. & H. R. R. Co., 67 Barb. 426, is a decision at the special term. I cannot find that it has ever been reviewed or cited. There is, however, a manifest distinction in my mind between the salient words up for judicial interpretation in that case, which were "for the purpose of its incorporation," and the words "necessary for the operation of such railroad." The facts in that case were that the road owned the six rods, and could build its road thereon, but the necessary embankment encroached on the defendants' lands. In Railroad Co. v. Welsh (Sup.) 23 N. Y. Supp. 195, the company "was cramped for room, and wanted additional entrance into the yard, and a place to unload passengers off the main tracks. It had to unload passengers on the main line, and delays occurred, and room for additional tracks was needed." In Railroad Co. v. Franz (Sup.) 8 N. Y. Supp. 727, the land was required for a side track for receiving freight. In Re New York Cent. & H. R. R. Co. (Sup.) 8 N. Y. Supp. 290, the lands were required for a train house and a passenger station at a terminus. In Re New York, L. & W. R. Co., 33 Hun, 148, the line of the proposed railroad crossed a ship canal, and, a swing bridge being necessary, the land was required for that purpose. In all of these authorities the object sought was necessary for the operation of the road, but in none of them was the proposed work analogous to that now under consideration, which is not to afford relief by adjuncts to the road operated upon the located route, but by the construction of another route or cut-off.

The learned counsel for the respondent admits that the application of section 13 of the railroad law is "extremely doubtful." Mr. Buchholz, the chief engineer of the plaintiff, testified:

"The intention of the Erie Railroad is to build only two additional tracks upon the changed alignment, and to retain as the existing main tracks the two that are there. There will exist through the village one main road on two different lines."

This plan, then, is not for the alteration or change of the route, but for construction of an addition to the existing route by means of a cut-off. I cannot find any statutory authority for the procedure taken.

Judgment and order reversed, with costs. All concur.