QUEENS TERMINAL CO. v. SCHMUCK et al.

(Supreme Court, Appellate Division, Second Department.   December 8, 1911.)

1. APPEAL AND ERROR (§ 262*)—APPEAL FROM CONFIRMATION OF REPORT OF COMMISSIONERS OF APPRAISAL—QUESTIONS REVIEWABLE.

Under Code Civ. Proc. § 3375, providing that an appeal from a final order in condemnation proceedings shall bring up for review proceedings antecedent thereto, the right of petitioner to maintain condemnation proceedings may be reviewed on appeal from an order confirming the report of commissioners of appraisal.

[Ed Note.—For other cases, see Appeal and Error, Dec. Dig. § 262.*]

2. EMINENT DOMAIN (§ 67*)—RIGHT TO EXERCISE POWER—JUDICIAL DETERMINATION.

The declaration of a statute conferring the power of eminent domain that the taking is for a public use is not conclusive, but the question whether the use is public is a judicial one.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 165–167; Dec. Dig. § 67.*]

3. EMINENT DOMAIN (§ 13*)—PUBLIC USE.

A corporation possessing the power of eminent domain can only exercise the power for the specific public use, or a part thereof, for which it has received the power, and it is not enough that it intends to devote the land sought to some public use.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 51–53; Dec. Dig. § 13.*]

4. EMINENT DOMAIN (§ 13*)—RIGHT TO EXERCISE.

A corporation incorporated by Laws 1894, c. 719, to maintain a tidal water way within specified territory, though possessing the power to acquire by condemnation proceedings the necessary lands, may not condemn land to enable it to perform a contract which it has made with a private corporation to enable the latter to perform a contract made with a city to convey to it the property acquired; the city having no power to acquire the property in the first instance, and being under no obligation to maintain it for a public use.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 51–53; Dec. Dig. § 13.*]

5. EMINENT DOMAIN (§ 13*)—RIGHT TO EXERCISE POWER—PUBLIC DUTY.

The grant of the power of eminent domain carries with it a public duty as well as a governmental power, and a corporation may not exercise the power to condemn certain property for a waterway which it is bound by private contract to convey away.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 51–53; Dec. Dig. § 13.*]

Rich and Hirschberg, JJ., dissenting.

Appeal from Special Term, Nassau County.

Proceedings by the Queens Terminal Company for the condemnation of the land of J. Carl Schmuck and others.   From an order confirming the report of the commissioners of appraisal, the owners appeal.   Reversed, and proceedings dismissed.

See, also, 144 App. Div. 914, 128 N. Y. Supp. 1142.

Argued before HIRSCHBERG, BURR, THOMAS, CARR, and RICH, JJ.

James S. Darcy, for appellants.

Edward M. Grout (Frank R. Greene, on the brief), for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

BURR, J.  The appeal from the order confirming the report of the commissioners of appraisal brings up for review the judgment which appointed them.

[1] The right of petitioner to maintain these proceedings lies at the threshold thereof, and may be thus reviewed.  Code Civ. Proc. § 3375; Matter of Niagara Falls & Whirlpool R. Co., 108 N. Y. 375, 15 N. E. 429.  Attack upon such right is based upon two grounds: First, that statutory authority does not exist to exercise the right of eminent domain for the purpose for which in this instance petitioner seeks to deprive defendants of their lands; and, second, that the act under which it obtains its corporate life violates constitutional provisions.

[2] Petitioner was incorporated by a special act, entitled "An act to incorporate the Tidal Water Way Company and to define its rights, powers and privileges."  Laws 1894, c. 719.  Subsequently, upon petition to the Supreme Court, an order was entered changing its name to the "Queens Terminal Company."  The first purpose of its corporate being expressed in said act is:

"To construct within the limits of the First Senate district as now established canals of such length, width and depth, as a majority of the board of directors may determine, connecting the tide waters adjacent to or within the limits of said First Senate district."

In addition, either as incidental to the power already conferred or by way of a grant of additional power, the act provides that the company shall have—

"power to lease or sell real estate acquired by it; * * * to take and hold such voluntary grant of real estate and other property as shall be made to it to aid in the construction, maintenance and accommodation of its canals, locks, basins, fixtures, *buildings, docks, wharves* and appurtenances, and to acquire by purchase or condemnation such real estate and property as may be .necessary therefor, *including land on either side of said canals to a distance of not exceeding one thousand feet.*"

A still later clause in said act includes among its buildings "warehouses."  If the particular scheme in which petitioner is now engaged is not a public enterprise within the true meaning of the term, or if it is not seeking to acquire defendants' land for any purpose for which the Legislature gave it the power of condemnation, petitioner must fail.  The determination of these questions is a judicial one belonging to the courts.  The fact that the act declares in words that it is a public act, or even that the taking is for a public use, is not conclusive.  Matter of Townsend, 39 N. Y. 171, 174; Matter of Deansville Cemetery Association, 66 N. Y. 569, 23 Am. Rep. 86; Matter of Eureka Basin Company, 96 N. Y. 42; Matter of Niagara Falls & Whirlpool R. Co., supra; Matter of Split Rock Cable Road Co., 128 N. Y. 408, 28 N. E. 506.

[3] Even although the petitioner intends to devote the land acquired to some public use, this alone would not be sufficient.  It must be the specific public use, or a part thereof, for which it has received the power to condemn.  Erie R. R. Co. v. Steward, 61 App. Div. 480, 70 N. Y. Supp. 698, affirmed 170 N. Y. 172, 63 N. E. 118.

[4]  It appears that the town of Hempstead in 1907 conveyed to

the corporation known as the "estates of Long Beach" certain lands to be used for its private enterprise, and that in connection with the development of its property the estates undertook to construct a waterway for the purpose of connecting Broad Channel and Dutch Gunning Lead, which are tidewaters. The land necessary for this purpose did not belong to the Estates Company, and it is conceded that it had no power to acquire the same in invitum. It therefore made a contract with petitioner to do that which the Estates had previously undertaken to do for its own private purpose, but which, lacking the right to exercise the power of eminent domain, it was unable to do. If this is not perfectly clear from the evidence adduced in this case, it is perhaps due to the fact that testimony competent to establish this fact was erroneously excluded. If the act referred to can be sustained as one conferring such power for a public use, it must be upon the ground that the chief corporate purpose of its creation is to improve the waterways within the territory described by the construction of canals which shall be public waterways, and that all other powers in the act expressed are incidental thereto. But by the express provisions of the contract between the petitioner and the Estates Company the former completely divests itself of any power over the canal to be constructed as soon as it is completed, and is relieved of any duty respecting the same.

[5] The grant of the power of eminent domain carries with it a public duty. "The delegation by the Legislature of its power of eminent domain to railroad corporation is justified, as a constitutional measure, upon the ground that their franchises are for a public use, and that, in accommodating the public by furnishing transportation for passengers and freight, they perform a public duty, and are invested with a quasi public character." Erie R. R. Co. v. Steward, supra. The same rule must obtain with a company such as a canal company, whose method of transportation is by water instead of by land. It is contrary to the principle underlying the delegation of this legislative power to permit a corporation to exercise the same to accomplish a result which by private contract it is bound to abandon the moment the result is attained, unless, to say the least, the other party to the contract is not only authorized, but bound, to maintain the completed work as a public use, which the Estates Company is not. It is true that this company has agreed with the town of Hempstead that this waterway when completed shall become the property of the town, and subject to its municipal jurisdiction, the same as other like town property. It is also true that petitioner agreed with the Estates Company that, upon the completion of said waterway, it would immediately convey, transfer, and surrender the same to the town of Hempstead, with all appurtenances thereto, the same to be thereafter held and used by said town of Hempstead and its inhabitants, and the public generally, forever, according to the true intent and meaning of said town contract. But the town has nowhere agreed to maintain this waterway for a public use, and we cannot find, nor has our attention been called to, any act by which the town has any statutory duty imposed upon it either to construct or maintain canals, nor

132 N.Y.S.—11

is it given the power of eminent domain to enable it to acquire the land necessary for the construction thereof. To state the case most favorably to the petitioner, it is seeking to condemn land to enable it to perform a contract which it has made with a purely private corporation in order to enable the latter, in turn, to perform a contract which it has made with a municipal corporation to convey to it the property thus acquired. But this property the municipal corporation has no power itself to acquire in the first instance, and, when acquired, it is under no obligation to maintain it for a public use. The situation is not analogous to that of a railroad corporation which has leased its lines to a similar corporation. A lesser public service corporation may be authorized to acquire land for the benefit of its lessee. Kip v. N. Y. & Harlem R. R. Co., 67 N. Y. 227; Matter of N. Y., L. & W. R. R. Co., 99 N. Y. 12, 1 N. E. 27. But the foundation for this authority is that:

"By its lease the lessor company in no respect escapes from or lessens its corporate duty to the state, but is continuing the performance of that duty through the agency of its lessee, and may at any time, through the failure of the. latter to perform its covenant obligations or by its absolute loss of corporate life and existence become repossessed of its line and property and bound to operate it for itself." Matter of N. Y., L. & W. R. R. Co., supra.

In this case, after it has once parted with the property here sought to be acquired pursuant to its contract, petitioner can never become repossessed of the same, no matter what the fault or delinquency of its transferee. But it also appears that, in addition to the avowed purpose of acquiring defendants' land for the digging of this canal, two other acknowledged purposes exist: One, to take the material thus obtained and make use of it to fill up the adjoining low land of the Estates Company, thus making it available property; and the other, to construct upon the strip of land not exceeding 1,000 feet in width, .upon the banks of the canal which it claims the right to acquire, bulkheads, wharves, and buildings. The use to which these buildings are to be put is not disclosed. Even the agreements above referred to, between the town, the Estates Company, and petitioner, relate only to waterways, and not bulkheads, wharves, and buildings. We conclude, therefore, that statutory authority does not exist for the exercise by petitioner of the power of eminent domain for the purposes here disclosed. Further objection to the right to maintain these proceedings is made upon the ground, first, that the act above cited under which the Tidal Water Way Company obtained its corporate life was a private act, embracing more than one subject, which is not expressed in its title, contrary to the express provisions of section 16 of article 3 of the state Constitution; and, second, that the power conferred upon it to exercise the right of eminent domain is not limited to the exercise of such power for a public use, which is contrary to the implied prohibition found in section 6 of article 1 of the same instrument. Embury v. Conner, 3 N. Y. 511, 53 Am. Dec. 325; Powers v. Bergen, 6 N. Y. 358. That the act is a private act cannot be disputed. Economic Power & Construction Co. v. City of Buffalo, 195 N. Y. 286, 88 N. E. 389. Does it relate to more than one subject? The limit of the rule in this regard has been thus defined:

"When the subject is expressed, all matters fairly and reasonably connected with it, and all measures which will or may facilitate its accomplishment, are proper to be incorporated in the act and are germane to the title." Economic Power & Construction Co. v. City of Buffalo, supra.

The subject expressed in the title of the act is a waterway company. It is difficult to see how the erection of "buildings, wharves, and docks" is any part of the ordinary function of a waterway or canal company, or how "warehouses" are necessary to the transaction of its business. But, if some of these purposes possibly might be regarded as incidental to the primary purpose, the acquisition of a strip of land not exceeding 1,000 feet in width on either side of the canal, upon which buildings and warehouses may be erected, certainly cannot be, since under another provision of the act authorizing the company to "lease or sell the real estate acquired by it" these may be disposed of to private individuals or corporations. This act is also subject to condemnation because it may authorize the taking of private property for a private use, even though petitioner continues to be the owner thereof. Matter of Eureka Basin Co., 96 N. Y. 42; Niagara Falls & Whirlpool R. Co., 108 N. Y. 375, 15 N. E. 429; Matter of Split Rock Cable Road Co., 128 N. Y. 408, 28 N. E. 506. In the Eureka Basin Case, supra, the court, speaking through Rapallo, J., said:

"The taking of private property for private purposes cannot be authorized even by legislative act, and the fact that the use to which the property is intended to be put, or the structure intended to be built thereon, will tend incidentally to benefit the public by affording additional accommodations for business, commerce or manufactures, is not sufficient to bring the case within the operation of the right of eminent domain, so long as the structures are to remain under private ownership and control, and no right to their use or to direct their management is conferred upon the public."

In this case the act provides that the corporation shall "regulate and fix the time and manner in which vessels, passengers and property shall pass through such canals and the toll to be paid therefor." If this might be termed an authority to the public generally to make use of the canals constructed by it upon complying with the regulations and paying the toll charges, one searches the act in vain for any provision therein authorizing the public to make use of its buildings and warehouses upon any terms or conditions whatever, even while the corporation continues to be the owner and in control thereof. "A possible limited use by a few, and not then as a right, but by way of permission or favor, is not sufficient to authorize the taking of private property against the will of the owner." Matter of Split Rock Cable Road Co., supra. So a possible limited right of a part of the property to be acquired is not sufficient if the remainder of the property remains under the absolute control of the condemning corporation or its grantee, freed from any right to the public to make use of the same except by its favor or consent. The test of the constitutionality of a legislative act is found, not in what has been, but what may be done under it. Nor is it possible in this case to separate those portions of this act which are in conflict with constitutional provisions from those which might, if existing independently, escape such con-

demnation, permitting the latter to survive. The act not only defines the powers of petitioner, but gives to it corporate life. The Legislature might never have been willing to grant it existence if it had understood that it could not possess the powers which we have determined to be invalid. In this view of the case it becomes unnecessary to consider the sufficiency of the award of the commissioners.

The judgment appointing these commissioners, and the order confirming their report, should be reversed, with costs; and, as the proceedings cannot be maintained, the same should be dismissed, with costs.

THOMAS, J., concurs; CARR, J., concurs in separate opinion; RICH, J., reads for affirmance, with whom HIRSCHBERG, J., concurs.

CARR, J. Without determining the question of the constitutionality of chapter 719 of the Laws of 1894, and as to which there is room for doubt, I feel constrained to vote for the reversal of the interlocutory and final orders in this proceeding, and I base my vote upon the single ground that the petitioner is plainly not seeking to acquire the lands in question for the purpose, to accomplish which the Legislature gave it the power of condemnation. When a corporation possessing the power of eminent domain seeks to take the land of another in invitum, that corporation must show, and the courts must decide, whether it is actually seeking to exercise such power within the use and purposes for which the power was granted. It is not enough that it intends to devote the land so acquired to a public use. The use must not only be public, but it must also be a part of the specific public use for which it has received the power. Erie Railroad Co. v. Steward, 61 App. Div. 480, 70 N. Y. Supp. 698; Id., 170 N. Y. 172, 63 N. E. 118. It is not necessary that such corporation shall require such lands for immediate use, but it may exercise the power "provided its necessities for such use in the immediate future are established beyond reasonable doubt. * * * The exercise of this power is in derogation of individual rights, and is always burdensome and often injurious to the owner beyond the power of pecuniary compensation to wholly redress, and should be allowed only when the necessity for the land clearly appears, and its proposed use is clearly embraced within the legitimate objects of the power." Matter of Staten Island Rapid Transit Co., 103 N. Y. 252, 257, 8 N. E. 550. It seems to me that the power of eminent domain given to the petitioner by the act of 1894 was given for the sole purpose of acquiring lands necessary for the construction and the maintenance by it or its successors of a tidal waterway with a defined route in the then counties of Queens, Richmond, and Suffolk. There is no claim that the petitioner is seeking to condemn the lands in question as a part of a defined route on which it intends to construct and maintain a tidal waterway, with the use of connecting canals. Its plain purpose is to connect two bodies of tidal waters by the means of a short canal, and then to completely divest itself of any power or duty over the canal so constructed. It is seeking to construct this canal more as a private.

contractor than as a quasi public agency. The grant of the power of eminent domain carries with it a public duty as well as a governmental power, and it seems quite extraordinary that a corporation can seek to exercise such power to accomplish a result which it is bound by private contract to abandon the moment the result is attained. This is not a case where the petitioning corporation simply intends to condemn for the benefit of a lessee, which possesses similar public powers and duties, as was the case in Kip v. New York & Harlem R. R. Co., 67 N. Y. 227; nor is it a case in which the petitioning corporation seeks to condemn land which it will need for its own corporate purposes in the near future, or which it may need, with the purpose of using its own system as a connecting link with other systems, and so increasing its own public usefulness, as was the case in Matter of Staten Island Rapid Transit Co., ut supra.

There is authority in this state that a railroad corporation which has leased its system for the full term of its corporate life may nevertheless exercise its power of eminent domain for a public use to be maintained by its lessee, but the reason for such holding, as given by the court which made it, is as follows: (a) That the statute which granted power to a railroad corporation to condemn lands for railroad purposes likewise authorized such corporation to condemn lands for the benefit of a lessee railroad corporation; (b) "and in the further consideration that by its lease the lessor company in no respect escapes from or lessens its corporate duty to the state, but is continuing the performance of that duty through the agency of its lessee, and may at any time, through the failure of the latter to perform its covenant obligations or by its absolute loss of corporate life and existence, become repossessed of its line and property and bound to operate it for itself, and that to the proper performance of its duty by itself or through its lessee the acquisition of lands or terminal facilities may be necessary and essential." Matter of Petition of N. Y., L. & W. R. R. Co., 99 N. Y. 12, 22, 1 N. E. 27, 31. Here, however, the petitioner is seeking to condemn land simply to perform a contract which it has with a purely private corporation, in order to enable that corporation to perform, in turn, a contract which the latter has made with a municipal corporation, the town of Hempstead, which last corporation has no power of eminent domain in the premises, and no statutory duty to maintain the proposed canal after it gets it by cession from the petitioner. The "canal" no doubt would be a public highway in a broad sense of the word, but it is not such a highway as comes within the provisions of the town law or the highway law.

While I feel that the result sought by the petitioner would be greatly to the public benefit in the locality affected, I am constrained to the opinion that the method by which the attainment of such result is sought has no warrant in law.

RICH, J. (dissenting). The constitutionality of the act, based upon the objection that it permits the taking of land by condemnation for private purposes, is not presented by the appellants, and there is no serious contention that the proposed canal or waterway is not to

be constructed for public use. The incorporating statute declares that lands required for the construction of the waterways "shall be deemed to be required for public use," which is sufficient to establish its public character. In addition, the contract under which the waterway is being constructed by the respondent obligates the petitioner upon its completion to immediately convey, transfer, and surrender it, with all of its appurtenances, to the town of Hempstead, "the same to be thereafter held and used by said town of Hempstead, and its inhabitants and the public generally, forever, according to the true intent and meaning of said town contract." The town contract provides that, upon the completion of the said waterways, they shall become the property of said town and subject to its municipal jurisdiction, the same as other town property, and declares its purpose to be to provide a continuous waterway from Jones inlet to East Rockaway inlet. It follows that, after the waterway is completed and transferred to the town, the petitioner cannot erect warehouses upon its banks, establish tolls for its use, or exercise the powers given by the incorporating statute, for the reason that such rights do not apply to a waterway owned by the town of Hempstead in which the petitioner will have no interest or control after such transfer. Nor can the town avail itself of the powers limited by the statute to the petitioner. The construction of this waterway was part of a proposition submitted to the electors of the town of Hempstead and adopted before the contracts were made. It was intended to be a public water highway. This being established, I think the case is brought within the rule declared in Matter of Burns, 155 N. Y. 23–27, 49 N. E. 246, that, the Legislature having determined the necessity for the exercise of the right of eminent domain, the validity of the act is not open to question on the ground that the use is not public. In Matter of William A. Fowler, 53 N. Y. 60, it was held that the necessity of the appropriation of land by those upon whom the Legislature has conferred the right of eminent domain cannot be inquired into by the courts; that is, the use to which the lands are to be put is public. The Legislature is the sole judge of the necessity unless it is otherwise provided in the act. This case has been cited and the rule reasserted many times, the latest by the Court of Appeals in Matter of Delavan Avenue, 167 N. Y. 259, 60 N. E. 589, and in People v. Fisher, 116 App. Div. 686, 101 N. Y. Supp. 1047. There is a manifest difference in the rules applicable to a corporation created under a general act, which claims to possess the power of eminent domain because of its character, and nature of the improvement it desires to make, under some other general act, and a corporation as to which the Legislature has determined the public character of the improvement to be made, and given the power of eminent domain for the purpose of acquiring land required for the authorized improvement. The act is not subject to the criticism that its purposes are not expressed in its title, which is, "An act to incorporate the Tidal Waterway Company and to define its rights, powers and privileges." This language is a notification to all persons interested that they may find in its provisions all of the rights and powers conferred upon the corporation to enable it

to construct and maintain a "waterway," which involves, almost nec-
essarily, the right to acquire the land needed for its bed by either pur-
chase or the exercise of the right of eminent domain. The name of a
corporation may materially affect the question as to whether a special
franchise granted by the act can be sustained. Economic P. & C.
Company v. City of Buffalo, 195 N. Y. 297, 88 N. E. 393. In that
case Judge Chase says:

"When the subject is expressed, all matters fairly and reasonably connected
with it, and all measures which will or may facilitate its accomplishment, are
proper to be incorporated in the act and are germane to the title."

The incorporation of a company and the defining of its rights and
powers are in reason and law but the consummation of a single pur-
pose. City of Elmira v. Seymour, 111 App. Div. 199, 97 N. Y. Supp.
623; Van Brunt v. Town of Flatbush, 128 N. Y. 50, 27 N. E. 973.
The object of the provision of the Constitution upon which this ob-
jection is based is to prevent the public from being misled. Matter
of Mayor, etc., of City of New York, 99 N. Y. 570, 2 N. E. 642.
Nothing short of clear proof that the title is misleading will justify a
finding that a legislative act is unconstitutional because of a failure
to express its purposes in the title. In Matter of Mayor, 99 N. Y.
577, 2 N. E. 643, Judge Finch said:

"The most valuable test of such a title, and the one which we have usually
employed, is the inquiry whether the title was so framed as to be deceptive
or misleading, and consummated the evil at which the constitutional prohibi-
tion was aimed. Matter of Lands in Flatbush, 60 N. Y. 398; Matter of Paul,
94 N. Y. 497. Where one reading a proposed bill with the title in his mind
comes upon provisions which take him by surprise, which he could not rea-
sonably have anticipated, and so both citizen and legislator are misled and
thrown off their guard, it is our duty to declare the condemnation of the fun-
damental law. But where, as in the present case, no such evil lurks in the
title, and the provisions criticised may be easily and reasonably grouped
within the scope and range of the general subject expressed, we ought not to
destroy the legislation assailed upon some nice and rigid criticism of forms
of expression."

It is impossible to spell out trickery or deception from the language
used in the title of the act under consideration, and the name of the
corporation alone indicates that the right of eminent domain is nec-
essary to effect its purposes, which right is properly included in the
"rights, powers and privileges" to which attention is directed by the
title. I do not regard the cases of Coxe v. State, 144 N. Y. 396, 39
N. E. 400; Matter of Eureka Basin, etc., Company, 96 N. Y. 42, or
Economic P. & C. Co. v. City of Buffalo, 195 N. Y. 286, 88 N. E.
389, as authorities to the contrary. In the first case the title was "An
act to authorize the drainage of marsh lands." In addition to the
powers usually granted for such purposes, the act conferred upon the
corporation the power to levy and collect assessments, and to drain
and reclaim tide water marsh lands. Such powers and rights were
not inferable from the title, which did not refer to the creation, pow-
ers, or rights of any corporation. Of this the court said:

"It is quite clear that no citizen or member of the Legislature would expect
to find such an extraordinary grant from the state of lands under water in
the body of a bill with such a title."

The question as to the unconstitutionality of the act because of its purposes not being expressed in its title was not considered in Matter of Eureka Basin, etc., Co., supra. In the Economic Power Company Case the title of the act was, "An act to incorporate the Economic Power and Construction Company." Extensive and extraordinary powers were granted under that title which the court held overcame every thought of the same being an incident to the incorporation of a power and construction company. I think that the contentions based upon the unconstitutionality of the act incorporating the respondent are without merit.

It is claimed by appellants that the necessity for taking the land was not established by the evidence. The answer to this is that the act provides that the corporation shall cause the necessary examination and surveys for its proposed waterways to be made, select the most advantageous route, and, when so determined and selected, acquire land by purchase or condemnation, and this amounts to a declaration by the Legislature that the land required for its construction was needed for public use. The company adopted surveys and maps showing the route selected, and, the Legislature having determined the public character of the improvement and given the specific right to condemn the land required, the exercise of such power cannot be inquired into by the courts (Matter of Fowler, supra), and the act is not open to question upon the ground that the use is not public (Matter of Burns, supra). Besides this, I think the evidence is sufficient to establish the necessity for taking the land for a public purpose. Its necessity cannot be successfully challenged because it is within the bed of the proposed waterway, and the land authorized to be acquired on each side of such bed, as shown by the surveys and maps. It is proven that the waterway is to be owned by the town for the use of its inhabitants and the public. If it were held that these words limited its use to the inhabitants of the town, as long as such use is in common and not for a particular individual or corporation, it is "public" within the meaning of that word as used in the Constitution, statutes, and by the courts. Pocantico Waterworks Co. v. Bird, 130 N. Y. 249, 259, 29 N. E. 246. It seems to me that the waterway is shown to be a public utility, usable by the public for public as well as private purposes. If it be true, as contended, that the main purpose of its construction is to afford ingress and egress by the public to the hotels and summer resorts erected and to be erected by the Beach Company, such purpose or user does not condemn the act for the right to exercise the power of eminent domain may be vested in a corporation which may be actuated solely by motives of private gain, if the use to be made thereof is for the benefit of the public. Pocantico Waterworks Co. v. Bird, supra; Economic P. & C. Co. v. Buffalo, supra, 195 N. Y. 295, 88 N. E. 389. Nor do I think the statute is to be considered in the light of what might be done under its provisions in determining the question of its constitutionality upon the case presented. The improvement presented is a completed one. The waterway when completed, with all of its appurtenances, is to be transferred to the town of Hempstead for the use of its inhabitants and the pub-

lic. It thereupon becomes a public utility and municipal property. Nothing more can be done, either by the respondent or the town, under the authority of the statute, and the question of what might be done under the statute if the respondent retained title to the improvement after it was completed is not properly before us. The contention that competent evidence bearing upon the question of the necessity of taking the land for a public purpose was improperly excluded is without merit. This question has been determined by the Legislature, and is not open to the consideration of the commissioners or of the court. Matter of Fowler, supra.

In view of my vote for affirmance, it may not be unwise to say of the contention that the award is so inadequate as to demand its reversal and a new appraisal that it is also without merit. It is argued that the dividing line between the land sought to be taken and the remaining land of the appellants is to be a straight-banked perpendicular cut of a depth of at least 10 feet, and that no provision is made to prevent the water from undermining and cutting away the lands of the appellants. This assumption is unwarranted, because it is shown by the uncontradicted evidence of the engineer in charge that the canal is being constructed with sloping banks and a careful regard to maintaining them in their integrity; and in this connection it is admitted by witnesses called for the appellants that, if the canal is completed in this manner, its banks will be preserved and bulkheading rendered unnecessary. Of course, the duty rests upon the respondent of constructing the waterway in such a manner as not to damage appellants' remaining property, and, if this is not done, they have an enforceable remedy for further damages. Johnson v. State of New York, 62 Misc. Rep. 15, 116 N. Y. Supp. 253. The consequences feared by the appellants are contingent, speculative, and merely possible, and are not for this reason to be considered in ascertaining damages, which must be determined as of the time of the award. Strohm v. New York, L. E. & W. R. R. Co., 96 N. Y. 305; Coonley v. City of Albany, 57 Hun, 327, 10 N. Y. Supp. 512; Mott v. Lewis, 52 App. Div. 558, 65 N. Y. Supp. 31; Stowers v. Gilbert, 156 N. Y. 600, 51 N. E. 282; Matter of Brooklyn Union El. R. R. Co., 105 App. Div. 111, 93 N. Y. Supp. 924. Speculative damages cannot be allowed, and we cannot say that the award of the commissioners is not a fair and adequate compensation for the property taken. The question was for their decision. They viewed the land before and after receiving evidence, heard and considered the proofs of the parties, saw the witnesses and observed their manner of testifying, and we are not at liberty, in the absence of apparent injustice to the appellants, to set their award aside. Brooklyn El. R. Co. v. Lewis, 87 Hun, 88, 33 N. Y. Supp. 881; Buffalo L. & Ry. Co. v. Phelps, 52 Misc. Rep. 315, 102 N. Y. Supp. 214; Harlem River & P. R. R. Co. v. Reynolds, 50 App. Div. 575, 64 N. Y. Supp. 199; Matter of Brookfield (Sarles Claim) 78 App. Div. 520, 524, 79 N. Y. Supp. 1022, 81 N. Y. Supp. 10; Matter of City of New York (Croton River

Dam) 129 App. Div. 711, 114 N. Y. Supp. 68; Matter of Simmons (Ashokan Reservoir) 132 App. Div. 574, 116 N. Y. Supp. 952.

There was no reversible error in the reception of evidence, and I just vote to affirm the final order and interlocutory judgment, with costs.