JEFFERY, Administratrix, Respondent, vs. KEWAUNEE, GREEN BAY & WESTERN RAILWAY Co., Appellant.

*January 14—February 9, 1926.*

*Master and servant: Minor employed on railroad drawbridge: Child labor law.*

1. A minor employed by a railway company to work on a drawbridge was not employed about docks or wharves at the time of his death, within the prohibition of sub. (3) (b) 11, sec. 103.05, Stats., where the only structures at such place were those necessary to support the drawbridge and protect it when open.  p. 209.
2. As commonly used, the term "switch" is applied to a mechanical device which turns a movable object from one course to another, and, as used in railroading, is defined as a device for moving a small section of track so that rolling stock may be run or shunted from one line of track to another.  pp. 209, 210.
3. In modern railroad practice the term "gate" has been applied to the movable barriers which close the entrance through which the public is permitted to enter upon, pass over, and leave the property of the railway company inclosed within its right-of-way fences.  p. 210.
4. A drawbridge is not a "switch" or a "gate," and a minor employed thereon by a railway company was not employed in "gate-tending" or "switch-tending" within the meaning of sub. (3), sec. 103.05, Stats., designating such employment as dangerous for minors.  p. 211.

APPEAL from a judgment of the circuit court for Brown county: HENRY GRAASS, Circuit Judge. *Reversed.*

This appeal is from a judgment of $1,500 in an action brought by the plaintiff as administratrix to recover for the death of her son, who was between seventeen and eighteen years of age at the time of his death. The deceased was engaged in assisting in turning a drawbridge which is part of the railway system of the defendant company which spans the Fox river at Green Bay. The boy fell into the water and was drowned, not while performing any service connected with the turning of the bridge, but apparently while attempting to spear logs in the river with a pike pole.

For the appellant there was a brief by *North, Parker, Bie & Welsh,* attorneys; and *Samuel D. Hastings,* of counsel, all of Green Bay, and oral argument by *Walter T. Bie.*

For the respondent there was a brief by *Cady, Strehlow & Kaftan* of Green Bay, and oral argument by *R. A. Kaftan.*

STEVENS, J.  Plaintiff's complaint bases her cause of action wholly upon the ground that the defendant railway company permitted the deceased boy to work on this drawbridge under such circumstances as to constitute "a violation by defendant of the law prohibiting the employment of minors at railroading and in and about docks and wharves." There is nothing in the pleadings or in the proof that would sustain recovery on the ground of negligence on the part of the defendant company.

Sub. (3) of sec. 103.05 of the Statutes provides that—

"The employments and places of employment designated in the following schedule shall be deemed to be dangerous or prejudicial to the life, health, safety or welfare of minors . . . under the ages specified:

"(b) Minors under eighteen years of age:

"3. Docks; in or about.

Jeffery v. Kewaunee, G. B. & W. R. Co. 189 Wis. 207.

"11. Railroads, street railways and interurban railroads; switch-tending, gate-tending, or track repairing; as brakeman, fireman, engineer, motorman, conductor, telegraph operator.

"12. Wharves; in or about."

The learned circuit judge correctly concluded that the deceased was not employed about docks or wharves at the time of his death. The only structures at the place in question are those which are necessary to support the drawbridge and to protect it when it is open. There is no proof that there is any dock or wharf in the vicinity of the bridge. Nor is there any proof that there is any artificial basin or inclosure for the reception of vessels at or near this drawbridge, as was the case in *Clark v. Los Angeles*, 160 Cal. .317, 116 Pac. 966. The bridge structure itself cannot be used for the purposes of either a dock or a wharf, both because of the nature of the structure and because of the current that runs at the place where the bridge is located.

It will be noted that sec. 103.05 does not include all work done in connection with the operation of railroads, but that it applies only to those phases of railroad work which are specifically enumerated in the paragraph of the statutes which relates to railroads. If the case falls within the provisions of the child labor law it must be because the boy was engaged in either "switch-tending" or "gate-tending" as these terms are used in sub. (3) (b) 11 of sec. 103.05, quoted above.

We must assume that these terms were used with their commonly accepted meaning. As commonly used, the term "switch" is applied to a mechanical device which turns a movable object from one course to another. The use of a switch commonly involves the changing of the course of a moving object to a course that is different from that on which it was proceeding before it encountered the switch.

A "switch," as the term is used in railroading, "is defined as a 'device for moving a small section of track so that rolling stock may be run or shunted from one line of track to another;' and 'in railroads, in its simplest form, two parallel lengths of rails joined together by rods, pivoted at one end, and free to move at the other end, forming a part of the track at its junction with a branch or siding.' Stand. Dict.; Cent. Dict." *Erie R. Co. v. Steward,* 61 App. Div. 480, 70 N. Y. Supp. 698, 700.   The purpose of a "switch" is to direct a car from the course which it was formerly pursuing.   *Thomson-Houston E. Co. v. Ohio B. Co.* 130 Fed. 542, 546.

The drawbridge here in question possesses none of the attributes of a switch.   Its purpose was to permit the rolling stock of the defendant company to continue on its course by conveying it across a navigable stream, and not to turn it from its course or to run or shunt it upon some other track than that upon which it was proceeding before it came to the drawbridge.

Since the term first appeared in Genesis, the word "gate" has been used to convey the thought of either the movable barrier which closes an opening into an inclosure, or the opening itself which is used for the purpose of entrance into or exit from the inclosure.   In modern railway practice the term "gate" has been applied to the movable barriers which close the entrance through which the public is permitted to enter upon, to pass over, and to leave the property of the railway company inclosed within its right-of-way fences.   A gate is " 'a protection,' 'an inclosing structure of wood, iron, or other material, intended to prevent intrusion from without or straying from within.'   A gate is a necessary part of such inclosing structure."   *Mackie v. Central Railroad,* 54 Iowa, 540, 6 N. W. 723, 724.   The term has likewise been applied to the movable barriers which guard the crossing of one railroad by another at grade.

Jeffery v. Kewaunee, G. B. & W. R. Co. 189 Wis. 207.

A drawbridge is not erected for the purpose of constituting a barrier to traffic either by rail or by water. It is erected for the purpose of removing the barrier which a railroad bridge would otherwise present to the passage of boats upon a navigable stream, and likewise for the purpose of removing the barrier which a stream, which could not be closed to navigation, would otherwise be to the transfer of railway cars from one side of the stream to the other.

The opinion of the learned trial judge very clearly indicates that he recognized the difficulty attendant upon a construction of the statute which would make the tending of a drawbridge either "gate-tending" or "switch-tending." It is clear that the statute is not subject to such a construction. The conclusion follows that the deceased at the time of his death was not engaged in either "gate-tending" or "switch-tending" and that therefore there was no violation of the child labor law in permitting this minor to assist in turning this drawbridge.

Inasmuch as the plaintiff based her right to recover entirely upon the ground that the defendant had violated the child labor law in permitting the deceased boy to assist in the operation of the drawbridge, it follows that she has no cause of action.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded with directions to dismiss the action.